## No. 25426

**The People of the State of Colorado, ex rel. Clinton E. Jeffers, Commissioner of Agriculture for the State of Colorado v. H. R. Gibson, Sr.; Gibson Products Company; and Glen C. Kelly d/b/a Kelly Dairy Farms**

(508 P.2d 374)

Decided February 13, 1973.　　　　Rehearing denied March 5, 1973.

Duke  W.  Dunbar,  Attorney  General,  John  P.  Moore,

Deputy, James Kreutz, Assistant, Russell P. Kramer, Special Assistant, for plaintiff-appellant.

Johnson, McLachlan & Tempel, George McLachlan, John Gehlhausen, Bardwell D. Odum, for defendants-appellants and cross appellants.

MR. JUSTICE DAY delivered the opinion of the Court.

This appeal arises from the refusal of the Chaffee County district court to grant a permanent injunction sought by the Commissioner of Agriculture under the Colorado Marketing Act, 1969 Perm. Supp., C.R.S. 1963, 7-3-2 et seq. Specifically, an injunction was sought under those provisions that each handler and distributor of milk or milk products must file with the Commissioner of Agriculture a schedule of prices for each marketing area thirty days prior to any sale in Colorado. It was alleged that Glen Kelly (Kelly Farms) of Elk City, Oklahoma, a "handler," and H. R. Gibson (Gibson Products) of Seagoville, Texas, a "distributor," were processing and distributing milk and milk products in Salida, Colorado, without the required schedule of prices.

Temporary and preliminary restraining orders were issued by the court, but by the time of the hearing on the question of permanent orders, Gibson had complied and had on file a schedule for thirty days. The court then refused to continue the injunction against Gibson since the matter of his noncompliance was moot. As to Kelly, who has not appeared either in the lower court or here, the court ruled it was without jurisdiction over that company because of service on Kelly outside of Colorado. The court found that Kelly was a nonresident and not a handler in Colorado. In addition, the court found that Kelly in his activities did not have the minimal contacts to make a finding that he was "doing business" in Colorado. We affirm.

The facts developed in the record show that dairy products

are purchased from Kelly by Gibson in Elk City, Oklahoma. The products are then placed on a Gibson truck and shipped by Gibson to a third entity having retail outlets in Canon City and Salida. Any business transacted within Colorado is done by the third entity, who sells the dairy products to the public, and by Gibson, who sells the products to those outlets. No agency or other connection exists between Gibson and Kelly save as buyer and seller. When Gibson loads the products purchased at the Kelly dock in Oklahoma, the destination is not controlled by Kelly. Although Kelly has knowledge that Gibson may distribute the products to the Colorado retail outlets, this is not necessarily so, and Gibson may distribute the goods he has purchased any place there is a market.

■ We turn our attention first to the attempt of the Commissioner of Agriculture to enjoin Gibson from distributing dairy products to its customers in Colorado. Despite Gibson's agreement that it is subject to the Act, and notwithstanding that Gibson has complied, the Commissioner seeks to further prohibit Gibson in the pursuit of the Colorado business because Kelly has failed to respond to the directions of the Commissioner. We hold the trial court was correct in finding that the Commissioner has no such authority. The milk Marketing Order provides for the posting of a schedule of prices at which milk is being sold in Colorado. Gibson has so informed the Agriculture Department. This compliance effectively puts control of Gibson under the Colorado Marketing Act. Since the Commissioner admits that it cannot direct or control the price of milk and has no interest in what Gibson has paid his supplier, there is no further action the Department could take against Gibson.

■ The *in personam* jurisdiction sought by the Commissioner over the activities of Kelly in Oklahoma was based on personal service had in Oklahoma by virtue of the so-called "Long-Arm Statute," 1965 Perm. Supp., C.R.S. 1963, 37-1-26. For jurisdiction to attach under the statute, there must be either a cause of action arising out of the commission of a tortious act in Colorado or the transaction

of any business within this state. On the latter ground this court pursuant to United States Supreme Court guidelines, has held "minimal contacts" between the state and the defendant necessary. The guidelines also suggest such contact cannot offend traditional notions of due process, fair play, and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; *Granite States Volkswagen, Inc. v. District Court,* 177 Colo. 42, 492 P.2d 624; *Czarnick v. District Court,* 175 Colo. 482, 488 P.2d 562; *Safari Outfitters, Inc. v. Superior Court,* 167 Colo. 456, 448 P.2d 783; *Perlman v. Great States Life Insurance Co.,* 164 Colo. 493, 436 P.2d 124; *Vandermee v. District Court,* 164 Colo. 117, 433 P.2d 335; *Knight v. District Court,* 162 Colo. 14, 424 P.2d 110; *White-Rodgers Co. v. District Court,* 160 Colo. 491, 418 P.2d 527.

In effect, the standards are those of a case by case analysis considering, among other things, regular and systematic activity, continuity of contacts, promotion and utilization of channels of interstate commerce, benefits and protections afforded by the state, casualness of presence, and an estimate of inconveniences. It is apparent that before the "long arm" of the state will be allowed to be utilized by a litigant to reach out and propitiously assist him in maintaining a suit resulting in a judgment *in personam,* it must be assured that the quality and nature of the activity is such that, in relation to the fair and orderly administration of justice, the prohibitions of the due process clause are not transcended. *International Shoe Co. v. Washington, supra; Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283; *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; *Travelers Health Ass'n. v. Commonwealth of Virginia,* 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154; *Hess v. Pawloski,* 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091.

Application of these guidelines to the instant situation convinces us that the Commissioner did not produce evidence that Kelly had sufficient contact with Colorado to merit *in personam* jurisdiction. Applying the statutory

"transaction of business" test, the court had no evidence before it that Kelly had any contact in Colorado. The Commissioner did not show that Kelly had outlets, either direct or through agency sources, in Colorado. No salesmen or other persons employed by Kelly come into the state, nor was Kelly shown to have vehicles or drivers entering Colorado. According to the record, Kelly is divested of ownership of the products he sells at the milk plant in Oklahoma. Those who buy are not controlled by Kelly as to what disposition will be made of the products. The products may be destroyed, given away or sold in Oklahoma, Texas, New Mexico, Kansas, or Colorado, for aught that is disclosed in the record.

In summary, the case of *Granite States Volkswagen, Inc. v. District Court, supra,* appropriately answers the problem posed here. In that case plaintiff purchased a Volkswagen in New Hampshire from the defendant, Granite States, a dealer in that state, and later sought to sue the retailer in Colorado for a claimed defect which developed in Colorado and caused him injury. The holding therein applies as well in the instant situation:

"Granite States does not come within that class of defendants that can be held to answer in Colorado courts under the terms of our Long Arm Statute. Granite States is strictly in the business of selling and servicing Volkswagens in the State of New Hampshire. It has no authority to sell, and does not sell, ship, or otherwise deal in Volkswagens beyond the New Hampshire borders. As a consequence, we deem it inconsistent with the requirements of due process to subject it to the jurisdiction of other states in which the automobile, because of its mobility, might eventually be used.

"* * * We do not believe that the plaintiff's notice of intended use to a New Hampshire retailer changes the local character of that retailer's business. It has not been shown that Granite States purposely solicited interstate business or that it availed itself of the channels of interstate commerce in the sale of Volkswagen automobiles."

Application of the above concepts illustrates that Kelly's

knowledge of milk that he sold eventually was to be marketed in Colorado cannot alter the essential local character of his Oklahoma business. In addition, there is no evidence that Kelly solicited or availed himself of channels of interstate commerce.

Because Colorado courts do not have jurisdiction over Kelly, the effort to penalize Gibson's business operations by tying him in with Kelly would obviously be improper. The ruling of the trial court was correct.

Judgment is affirmed.

MR. CHIEF JUSTICE PRINGLE concurs in the result.

MR. JUSTICE GROVES does not participate.