**FIRST WESTERN GOVERNMENT SE-CURITIES, INC., et al., Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

**Civ. A. No. 83–JM–548.**

United States District Court,
D. Colorado.

Jan. 10, 1984.

Stanley L. Drexler, Drexler, Wald & Abramovitz, P.C., Denver, Colo., Richard Sideman, Sideman & Bancroft, San Francisco, Cal., for plaintiffs.

Michael J. Kearns, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., Janis E. Chapman and Nancy E. Rice, Asst. U.S. Attys., Denver, Colo., for defendants.

## ORDER

JOHN P. MOORE, District Judge.

THIS MATTER is before me on motions to dismiss filed by two separate groups of defendants in this action. Jurisdiction in this cause is founded upon 26 U.S.C. §§ 7217 and 7431.[1]

The complaint seeks relief against the United States and 14 of its employees in the Internal Revenue Service (Service) of the United States Department of Treasury. The complaint alleges that a Revenue Agent's Report ("RAR") prepared by defendant Cottingim concerning plaintiffs' business operations and practices contained confidential "return information" of the plaintiffs as that term is defined in 26 U.S.C. § 6103(b)(2)(A). The RAR was caused to be disseminated by some of the defendants to investors of First Western. Plaintiffs allege that disclosure of this information was not made for the purpose of obtaining information with respect to the correct determination of tax liability or for the purpose of explaining to investors why their First Western write-offs were disallowed, but was made as a result of gross negligence, or willfully and maliciously with the intent of damaging plaintiffs' business and business reputation.

Defendants Armstrong, Roginski, Davis, Metcalf, and Carpenter were dismissed from this action by a stipulation entered between the parties on July 13, 1983. Of the remaining defendants, defendants Merlo, Beck, Cottingim, Geisler, and De La Pena have filed a motion to dismiss the complaint on the grounds that they are not subject to the personal jurisdiction of this court. Defendants United States, Lobsing-er, Graham, Cofone, and Conley have filed a motion to dismiss on the grounds that no cause of action has been stated upon which relief can be granted. Because the latter motion is accompanied by, and relies upon, matters outside the complaint, it will be treated as a motion for summary judgment under Rule 12(c) of the Federal Rules of Civil Procedure.

### I. *Motion to Dismiss*

Plaintiffs assert that this action is properly before the court pursuant to 28 U.S.C. § 1391(e), which provides:

A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action ....

The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer ‚or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which this action is brought.

Under the terms of this statute, the instant action is properly in Colorado because some of the named defendants reside in this district. However, defendants challenge the very applicability of § 1391(e) to these facts in their motion to dismiss.

Recently, the United States Supreme Court held this section inapplicable to a suit for money damages brought against a federal official in his individual capacity. *Stafford v. Briggs*, 444 U.S. 527, 537, 100 S.Ct. 774, 781, 63 L.Ed.2d 1 (1980).

---

**1.** Prior to the enactment of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), P.L. 97–248, an action for unauthorized disclosure of tax return information had to be brought personally against the employee making the disclosure under 26 U.S.C. § 7217. TEFRA repealed § 7217 and adopted a new § 7431, which authorizes an action against the United States as a result of disclosures made by employees of the United States. Section 7431 applies to disclosures made after September 3, 1982.

The Court's holding was based on an extensive review of the legislative history of the section and on the policy of not wanting to place federal officers, solely by reason of their government service, in a different posture in personal damages suits from that of all other persons. Plaintiffs direct the court to a footnote in *Stafford* where the Court notes in passing that § 1391(e) does apply to actions which are nominally against an individual officer but are in reality against the government. The identity of the named parties defendant is not controlling in deciding whether an action is against the government. The dispositive issue is whether the judgment is ultimately payable by the government or by the individual. *Stafford v. Briggs*, 444 U.S. 542, n. 10, 100 S.Ct. 784, n. 10.

■ Thus, the question of whether the extraterritorial service of process and nationwide venue provisions of 28 U.S.C. § 1391 are applicable here turns on a determination of whether this complaint is brought against the defendants in their individual capacities or in their official capacities. The plaintiffs seek to support their position that the defendants are being sued in their official capacities by directing me to 26 U.S.C. § 7423(2), which authorizes the Secretary to repay all damages and costs recovered against any officer or employee of the United States in any suit brought against him in the due performance of his duties under title 26. Plaintiffs read this section as effectively insulating defendants from any personal liability for a damage award in this action and thus conclude that because the United States will pay any judgment awarded, the application of the service of process and venue provisions of 28 U.S.C. § 1391 is appropriate.

■ I disagree. Initially, it must be noted that the language of 26 U.S.C. § 7423(2) is permissive, not mandatory. *Lutz v. United States*, 82–1 U.S.T.C. ¶ 9274 (S.D.Tex.1982). Accordingly, it cannot be established definitively that the individual defendants would not ultimately be liable for any resulting judgment. More importantly, *Stafford v. Briggs*, read as a whole,

makes clear that the intended scope of § 1391(e) is limited to mandamus type actions. *Id.* 100 S.Ct. at 782. Here, the plaintiffs have named the individuals as defendants; and their complaint seeks damages from the individuals, thus making the action one against the defendants personally and not in the nature of mandamus. To accept plaintiffs' line of reasoning would render this distinction set out in *Stafford* meaningless. It seems to me that a careful reading of *Stafford* leads to the conclusion that this is precisely the kind of action in which the scope of § 1391 was intended to be limited in order to relieve federal employees from having to defend in distant forums solely because of their status as federal employees.

■ Because 28 U.S.C. § 1391(e) is inapplicable to the case at bar, jurisdiction can be asserted over these out-of-state defendants only if they are subject to jurisdiction under the Colorado long-arm statute, Colo. Rev.Stat. § 13–1–124(1) (1973). That statute provides that personal jurisdiction can be asserted over nonresident defendants who transact business in Colorado or who have committed a tortious act in the state. The defendants have submitted affidavits that establish that they are all residents of states other than Colorado and that they have at no time participated in any work assignments in Colorado or traveled to Colorado in connection with any work assignments. On the basis of these uncontroverted affidavits, it cannot be argued that defendants have transacted business in Colorado as that phrase has been defined by case law interpreting the long-arm statute. *See People ex rel. Jeffers v. Gibson*, 181 Colo. 4, 508 P.2d 374 (1973); *Safari Outfitters, Inc. v. Superior Court*, 167 Colo. 456, 448 P.2d 783 (1968).

■ It is clear from a reading of the complaint that the only tortious act which could serve as a basis for long-arm jurisdiction in Colorado is the disclosure of the RAR. Disclosure of the RAR by defendants to other agents in the Service is authorized by 26 U.S.C. § 6103(h)(1), and it is not alleged that any of the out-of-state defend-

ants disclosed the RAR to customers of First Western in Colorado. Accordingly, long-arm jurisdiction cannot be exercised over defendants on that basis. Because the defendants have not committed tortious acts within Colorado nor have "minimum contacts" with the state, jurisdiction over them cannot be exercised by this court under the Colorado long-arm statute. *Premier Corp. v. Newsom*, 620 F.2d 219 (10th Cir.1980).

## II. *Motion for Summary Judgment*

The remaining defendants, the United States and Colorado residents Lobsinger, Graham, Cofone, and Conley, cite four grounds in support of their argument that the allegations of the complaint do not as a matter of law state a cause of action. These grounds are (1) that no disclosures of tax return information of the plaintiffs have been made; (2) that the return information in the RAR was return information of plaintiffs' customers which may be disclosed to the customers pursuant to § 6103(e) and § 6103(h)(4)(A); (3) that even if the information in the RAR was "return information" of plaintiffs, it could still be disclosed to the First Western investors under § 6103(h)(4)(C); and (4) that each of the defendants acted at all times with the good faith belief that the disclosure of the RAR was proper.

Because it is impossible to address these contentions in a factual vacuum, it is necessary to briefly supplement the factual background of this action. Plaintiff, First Western Securities, Inc., is allegedly a dealer and broker in government securities. Samuels, Kramer and Co. is an investment advisor which provides investment services to First Western. Plaintiff Sidney Samuels is the president of both First Western and Samuels, Kramer and Co. Following an in-house investigation in 1981 and early 1982, the defendants notified customers of First Western by means of a formal report of the Service, called a "30-day letter," that losses claimed by the customers on their income tax returns as a consequence of certain transactions with First Western would be disallowed in full. Accompanying each letter was the RAR which set forth grounds claimed by the Service for disallowing the losses. The RAR included a statement describing testimony given by Sidney Samuels, during the course of which he repeatedly invoked the fifth amendment in response to questions concerning the nature of his practices and operations. The testimony was elicited to enforce IRS summonses in connection with audits of First Western investors. Plaintiffs have not alleged that the defendants disclosed the RAR or the information contained therein to any persons except First Western investors or their representatives.

Section 7431(a)(1) of the Internal Revenue Code, 26 U.S.C. § 7431(a)(1) provides:

> If any officer or employee of the United States knowingly, or by reason of negligence, discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

Thus, the issue is whether these defendants disclosed return information of the plaintiffs in the RAR that violated § 6103. Section 6103 in general specifies that tax returns and information collected with regard to establishing the existence or amount of a tax liability shall be confidential. The section goes on to provide exceptions under which information may be released to various types of interested parties, including the taxpayer himself. Return information is defined in 26 U.S.C. § 6103(b)(2)(A).[2]

---

**2.** "Return information" is defined at 26 U.S.C. § 6103(b)(2)(A) as:

a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, defi-

ciencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a

The parties argued at length concerning whether the information used in preparation of the RAR contained return information of the plaintiffs or was information gathered and generated solely from audits of First Western investors. It is my conclusion after reviewing the affidavits submitted and the RAR itself that the great bulk, if not all, of the information disclosed in the RAR was gained through audits of the investors themselves. Accordingly, the disclosure of that information to the investors was clearly allowable pursuant to 26 U.S.C. § 6103(e). However, even assuming for purposes of this motion that the mention of Mr. Samuel's decision to invoke the fifth amendment privilege during related proceedings can be considered return information of the plaintiffs, I still find that the disclosure of the information contained in the RAR was authorized.

> A return or return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration, but only—
>
> . . . .
>
> (C) if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding . . . .

26 U.S.C. § 6103(h)(4). There is little doubt that an audit, with its numerous procedural steps and protections and its appeal process, constitutes an administrative proceeding relating to tax administration.[3] It is also undisputed that the investors to whom the RAR was disclosed were themselves parties to the audit.

Plaintiffs respond, however, that the provisions of § 6103(h)(4) apply only when the disclosure is made to government officials for their use in a trial and do not apply so as to authorize disclosure of the information to a taxpayer. They rely on *Chamberlain v. Kurtz*, 589 F.2d 827 (5th Cir.1979), *cert. denied*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54, in support of this argument. *Chamberlain* held § 6103(h)(4) inapplicable where a taxpayer who brought a Freedom of Information Act suit against the IRS sought to compel production of records contained in a criminal file where the Secretary had withheld those documents from disclosure on the grounds that the disclosure would seriously impair federal tax administration. Given the factual differences between *Chamberlain* and the case at bar, the former offers little support for plaintiffs' position. On its face, § 6103(h)(4)(C) provides that disclosure *can* be made to a party to an administrative proceeding if the return information relates to a transactional relationship between the party and the taxpayer. The disclosure of information relevant to the audit is consistent with the mandate found in 26 C.F.R. § 601.-105(c)(2)(ii). That regulation provides that a revenue agent should "prepare a complete examination report [RAR] fully explaining all proposed adjustments" to be provided to the taxpayer with his "30-day letter."

Here, it is clear that to the extent the information in the RAR contained confidential return information of plaintiffs, the use of that information was authorized under § 6103(h)(4)(C) because the information was used in the course of an administrative tax proceeding and clearly relates to a transactional relationship between the investors to whom the RAR was disclosed and the taxpayer, which directly affects the resolution of the proceeding. The fact that the promoter of a tax shelter refused to provide testimony substantiating the investment transactions claimed by the investors is directly related to the question of whether there are adequate grounds to al-

---

return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense

. . . .

3. The steps available in the audit and appeal process are set forth in 26 C.F.R. §§ 601.105 and 601.106.

low the claimed deductions. The statute does not require that the disclosure be "necessary" to the resolution of the proceeding as plaintiffs urge, only that the disclosure affect the resolution of the issues in the proceeding.

Accordingly, it is

ORDERED:

1. The motion of defendants Merlo, Beck, Cottingim, Geisler, and De La Pena to dismiss the complaint for lack of personal jurisdiction is granted.

2. The motion of defendants United States, Lobsinger, Graham, Cofone, and Conley for summary judgment is granted. Judgment shall enter for the defendants and against plaintiffs on all claims raised in the complaint. Defendants shall have their costs upon the filing of a bill of costs within 10 days of the entry of this order.