The Honorable Bob SHAFFER, in his official capacity as a member of the United States House of Representatives; Walt Mueller, a Missouri State Senator; John R. Stoeffler, a United States taxpayer; and Gregory D. Watson, a United States taxpayer and National Coordinator of the Political Movement to Ratify the 27th Amendment, Plaintiffs,

v.

William Jefferson CLINTON, President of the United States of America, in his official capacity; Robert E. Rubin Secretary of the Treasury, in his official capacity; Gary Sisco, Secretary of the United States Senate, in his official capacity; and Jeff Trandahl, Clerk of the United States House of Representatives, in his official capacity, defendants.

No. Civ.A. 99–K–201.

United States District Court,
D. Colorado.

July 2, 1999.

**1016**

Taylor T. Pensoneau, William Perry Pendley, Mountain States Legal Foundation, Denver, CO, for plaintiffs.

Jennifer E. Kaplan, Federal Programs Branch, Washington, DC, Linda A. McMahan, United States Attorney, Denver, CO, Thomas B. Griffith, Morgan J. Frankel, Deputy Senate Legal Counsel, Washington, DC, Geraldine R. Gennet, Kerry W. Kircher, Office of the General Counsel, Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

The complaint alleges annual cost of living adjustments (COLAs) to salaries of members of Congress violate the Twenty-seventh Amendment to the Constitution of the United States. The COLAs are applied to congressional pay in accordance with the Ethics Reform Act of 1989, Pub.L. No. 101–194, 103 Stat. 1716 (1989), codified at 2 U.S.C. § 31(2). The Twenty-seventh Amendment provides, in its entirety: "No law varying the compensation for the services of the Senators and Representatives shall take effect until an election of Representatives shall have intervened." U.S. CONST. amend. XXVII. Plaintiffs contend each COLA is an independent law that violates the Constitution. Defendants move to dismiss, arguing that plaintiffs lack standing, this court has no jurisdiction, venue is incorrect, the defendants are improper, the case is not ripe, and plaintiffs fail to state a claim upon which relief may be granted.

Simultaneous with the filing of their opposition to the motions to dismiss, plaintiffs filed an Alternative Motion for Summary Judgment, asserting there is no genuine issue as to any material fact remaining in dispute and plaintiffs are entitled to judgment as a matter of law. A number of the "facts" listed by plaintiffs as not in dispute are legal conclusions and this case is appropriately disposed of at this juncture based upon the arguments in the motion to dismiss. I grant defendants' motions to dismiss and deny plaintiffs' alternative motion for summary judgment.

## I. STANDING

Four plaintiffs filed the complaint. One plaintiff (Shaffer) represents Colorado in the United States House of Representatives. Another plaintiff (Mueller) is a state senator from Missouri who voted, as a member of the Missouri State Legislature, to ratify the Twenty-seventh Amendment. The remaining two plaintiffs (Watson and Stoeffler) are listed as "taxpayers." (Complaint at 2.)[1]

■ Defendants' motions to dismiss argue Mueller, Watson, and Stoeffler have no standing to sue. In order to establish standing, plaintiffs must demonstrate 1) they have suffered a concrete and particularized injury in fact, 2) traceable to the defendants' act(s), and 3) likely to be redressed by a favorable decision by the court. *Bennett v. Spear*, 520 U.S. 154, 167, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997); *Lujan v. Defenders of Wildlife*, 504 U.S.

1. Plaintiff Watson was the strongest force in the revival and eventual movement to ratify the amendment. In 1982, while performing research for a paper in a government class at the University of Texas, Watson discovered that the compensation amendment, proposed in 1789 with the Bill of Rights, lay dormant but still potent. Watson wrote a paper, *Can An Amendment To The United States Constitution Proposed By Congress In 1789, Which Has Never Been Ratified, Still Be Ratified–Even After All These Years?* Despite the profuse title, Watson received a grade of "C" on his paper.

Undaunted by his professor's criticism, Watson undertook a self-financed, ten-year crusade to influence state legislatures to consider and ratify the Madison amendment. His eventual success was noted on May 18, 1992, when the Archivist of the United States ruled the Twenty-seventh Amendment ratified. Richard B. Bernstein, *The Sleeper Wakes: The History and Legacy of the Twenty-seventh Amendment*, 61 Fordham L.Rev 497, 539–540 (1992). One wonders what a student of Watson's professor would need to do to get an "A."

555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The standing examination is "especially rigorous" when the court is asked to decide on the constitutionality of action taken by another branch of the federal government. *Raines v. Byrd,* 521 U.S. 811, 117 S.Ct. 2312, 2317–18, 138 L.Ed.2d 849 (1997).

### A. INJURY IN FACT

#### 1. *Taxpayer plaintiffs (Watson, Stoeffler)*

Two of the plaintiffs claim standing to sue on the basis of their status as United States taxpayers. They state taxpayers have standing to sue when "congressional action under the taxing and spending clause is in derogation of the constitutional provisions which operate to restrict the exercise of the taxing and spending power." *Flast v. Cohen,* 392 U.S. 83, 102–3, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

Generally, a federal taxpayer who asserts generalized grievances rather than claiming "he has sustained or is in immediate danger of sustaining some direct injury," has no standing to sue. *Commonwealth v. Mellon,* 262 U.S. 447, 488, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). The Flast decision carved out exceptions to the prohibition against federal taxpayer standing, allowing taxpayer challenges to congressional action under the Taxing and Spending Clause of Article I, Section 8 of the Constitution. The Court later clarified the issue of taxpayer standing by noting that taxpayers may claim standing only in cases involving acts of Congress under its taxing and spending authority when those acts implicate the Establishment Clause of the Constitution. *See United States v. Richardson,* 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974) (*cited in Colorado Taxpayers Union v. Romer,* 963 F.2d 1394, 1399 (10th Cir.1992)).

■ In this case, the taxpayers have no apparent standing to sue for two reasons. First, congressional pay increases under the Ethics Reform Act have nothing to do with the Establishment Clause. Second, Congress' authority to adjust compensation of its members is derived not from the Taxing and Spending Clause, but from the Ascertainment Clause of the Constitution. *Richardson v. Kennedy,* 313 F.Supp. 1282, 1285–86 (W.D.Pa.1970). Plaintiffs' challenge involves matters outside the Establishment Clause under congressional Ascertainment Clause authority. The taxpayer plaintiffs have no standing to sue.

#### 2. *State legislator (Mueller)*

Senator Mueller claims he has standing to sue as a taxpayer and as a member of a state legislative body that voted to ratify the Twenty-seventh Amendment. As the previous section indicates, this plaintiff has no standing to sue as a federal taxpayer. Plaintiffs argue that Senator Mueller, as a voter in congressional elections, has been denied his ability to vote based on how his representative in Congress voted on congressional pay increases. They cite no authority for their proposition that prospective voters in congressional elections have standing to sue. The generalized nature of an injury to a voter is similar to that of the taxpayer described above. As a voter, Senator Mueller does not claim a direct, particularized injury. Citizens have no standing to sue to enforce non-particularized constitutional violations. *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 220, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974).

■ A legislator's interest in the enforcement of a law is indistinguishable from that of any other member of the public. *Daughtrey v. Carter,* 584 F.2d 1050, 1057 (D.C.Cir.1978). Senator Mueller's vote to ratify the Twenty-seventh Amendment did not change his position with regard to standing. Once the Twenty-seventh Amendment became part of the Constitution, any failure to enforce or follow the Amendment affects Senator Mueller in the same generalized way it affects any member of the public. Because mem-

bers of the public have no standing to file suit based on generalized grievances, Senator Mueller has no standing in this case.

### 3. *U.S. Congressman (Shaffer)*

■ Congressman Shaffer's claim is based on an assertion that his political position with his constituency is damaged by automatic annual increases to his compensation. Because automatic COLAs have a direct and specific effect on congressional salaries, a congressman's right to sue is not limited by the *Frothingham* and *Schlesinger* standards.

In a case substantially similar to the instant case, a United States congressman was held to have standing in challenging the annual COLAs to his compensation. *See Boehner v. Anderson,* 30 F.3d 156, 160 (D.C.Cir.1994). Then-judge, now Justice Ruth Bader Ginsburg, writing for the court of appeals in *Boehner,* addressed the issue of whether it was proper for a court to rule on a congressman's contention that an increase in his pay constitutes a harm to his political position. She deferred to the congressman's opinion that his increased salary was a distinct and palpable injury. *Id.*

Defendant Trandahl distinguishes *Boehner,* arguing that Shaffer does not trace an injury to a specific COLA, while Boehner claimed that a specific COLA, the 1993 adjustment, violated the Twenty-seventh Amendment. Plaintiffs counter by claiming that three COLAs have violated the Twenty-seventh Amendment: 1992, 1993, and 1998. I note the first of these, in 1992, preceded the ratification of the Twenty-seventh Amendment.

### B. *EQUITABLE DISCRETION*

Executive branch defendants argue I should exercise equitable discretion not to hear the case. Because Congress must approve each proposed COLA in order to modify congressional salaries, Congressman Shaffer can obtain relief through the use of the legislative process. Congressman Shaffer claims his injury arises from increases to his compensation as a member of Congress. Congressman Shaffer is free to persuade his congressional colleagues not to approve the COLAs. He has an internal remedy available through the legislative process.

Executive defendants assert, even if Congressman Shaffer has standing, I should not hear the lawsuit. "[I]f a legislator could obtain substantial relief from his fellow legislators through the legislative process itself, then it is an abuse of discretion for a court to entertain the legislator's action." *Melcher v. Federal Open Market Committee,* 836 F.2d 561, 565 (D.C.Cir.1987). The D.C. Circuit echoed the same tone in 1988, but not without noting that this use of equitable discretion had not been considered by the Supreme Court, or, for that matter, by circuits other than the D.C. Circuit Court of Appeals. *Humphrey v. Baker,* 848 F.2d 211, 214 (D.C.Cir.1988). Even within the D.C. Circuit, treatment of equitable discretion does not enjoy unanimous acceptance. *Id.* I reject it as an aberrant use of the concept of discretion.

Deference to legislative authority was restated, without using the term "equitable discretion," by the United States Supreme Court in *Raines v. Byrd,* 521 U.S. 811, 117 S.Ct. 2312, 2320–22, 138 L.Ed.2d 849 (1997). There, the Court found members of Congress did not have standing to challenge the Line Item Veto Act. The existence of an internal remedy—Congress' legislative authority to repeal the legislation—meant the plaintiff members of Congress had not suffered individual injuries through the enactment of a law that altered and violated the constitutional budgetary process. The same could be said for Congressman Shaffer. An internal remedy of legislative action to repeal the Ethics Reform Act of 1989 is available. The existence of such remedy may properly restrict a court from hearing the case. Congressman Shaffer's claimed injury, though, is more particularized than that of

the congressional plaintiffs in *Raines*. The violation of the Constitution claimed by Shaffer directly affects his salary, where the *Raines* defendants' constitutional challenge was a generalized complaint that the Line Item Veto offended the constitutionally prescribed budgetary process.

## C. CAUSATION / REDRESSABILITY / PROPER PARTIES

The second requirement for standing is causation. To establish standing, the plaintiffs must show the injury is traceable to the defendants' acts. *Bennett v. Spear*, 520 U.S. at 167, 117 S.Ct. 1154. Defendants raise various independent arguments that they have done nothing to injure the plaintiffs. The third element is redressability: the plaintiff must show the injury could be cured by a favorable decision by the court. The issues of causation and redressability are intertwined in this discussion with that of whether the defendants are proper parties to the suit. Each defendant argues, even if Congressman Shaffer were injured, the injury cannot be traced to or resolved by that defendant.

### 1. *Defendant Trandahl—Clerk of the U.S. House of Representatives*

The complaint, dated January 29, 1999, names Robin H. Carle, Clerk of the House of Representatives, as a defendant. Ms. Carle resigned from that position effective January 1, 1999, and was replaced by Jeff Trandahl on January 6, 1999. In the March 19, 1999 Entry of Appearance of counsel for defendant Carle, the House counsel suggested substituting Trandahl for Carle as a named defendant. On March 23rd, this court ordered the substitution as proposed by House counsel.

Trandahl argues his official duties as House Clerk do not include disbursement of the payment of salaries to House members. He claims those duties are the responsibility of the Chief Administrative Officer of the House. Trandahl cites 2 U.S.C. § 80, which states:

The moneys which have been, or may be, appropriated for the compensation and mileage of Members and Delegates shall be paid at the Treasury on requisitions drawn by the Chief Administrative Officer of the House of Representatives, and shall be kept, disbursed, and accounted for by him according to law, and he shall be a disbursing officer, but he shall not be entitled to any compensation additional to the salary fixed by law.

■ Plaintiffs maintain the Clerk of the House is the proper party because the clerk is "responsible for all personnel who distribute salaries and pensions to Members of the House...." In a subsequent memorandum, plaintiffs request the opportunity to amend their complaint, if the court agrees that Trandahl is not a proper party, to substitute the "specific official or officials working under Mr. Trandahl who are the proper parties." It is unclear whether the Chief Administrative Officer of the House works "under Mr. Trandahl." Trandahl himself, though, did not cause and cannot redress the injury alleged by Congressman Shaffer. Trandahl is an improper party to this action.

### 2. *Executive Branch Defendants— President Clinton and Secretary of the Treasury Robert Rubin*

The complaint names President Clinton in his capacity as "Chief Executive of all individuals in the Executive Branch who have the authority to pay pensions...." (Complaint at 2.) The complaint also names the Secretary of the Treasury as he is "responsible for the paying of all monies as established by the Secretary of the United States Senate and Clerk of the United States House of Representatives." (*Id.*)

■ If the extent of the president's responsibility in this case is his role in the payment of pensions to retired congressmen and their spouses, the president has not injured the plaintiffs and should not be a party to this suit. The Twenty-seventh Amendment does not deal with congres-

sional pensions. Plaintiffs cite no authority that indicates congressional pensions fall under the Twenty-seventh Amendment or the Ethics Reform Act of 1989. Congressman Shaffer is not receiving, nor eligible to receive, a congressional pension at this time. He cannot and does not claim a personal, direct injury as the result of payments of congressional pensions. Any claim Congressman Shaffer makes on the basis of his future pension benefits is not ripe because is does not represent a present or imminent injury. *See New Mexicans for Bill Richardson v. Gonzales,* 64 F.3d 1495, 1499 (10th Cir.1995).

The executive defendants argue they are included for activity that is purely ministerial and cite a Vermont district court ruling that a government official whose role in a case was entirely ministerial was not a proper party to the suit. *See Goulet v. Schweiker,* 557 F.Supp. 1250, 1260–61 (D.Vt.1983). The executive defendants also note the court may not enjoin a president from the performance of his official duties. *See Franklin v. Massachusetts,* 505 U.S. 788, 802, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992).

### 3. *Defendant Sisco, Secretary of the United States Senate*

■ The Secretary of the Senate argues any injury suffered by Congressman Shaffer cannot be traced to the Secretary of the Senate. Congressman Shaffer is not a member of the United States Senate. His salary is not calculated or paid by the Senate. The Secretary of the Senate plays no role in the payment of salaries to members of the House of Representatives. Shaffer claims an injury in the form of COLAs to his House salary. The Secretary of the Senate was not involved in any aspect of determining, calculating, or paying House member salaries. If Congressman Shaffer's injury is a damaged reputation resulting from his increased salary as a member of the House of Representatives, the Secretary of the Senate neither caused nor is capable of curing that injury.

Secretary Sisco is not a proper party to this action.

## II. JURISDICTION

Plaintiffs claim jurisdiction under 28 U.S.C. § 1331. The legislative defendants, Trandahl and Sisco, challenge personal jurisdiction, asserting that the Colorado long-arm statute does not apply to them as defendants. Additionally, the legislative defendants assert that personal jurisdiction over them in a Colorado court would violate due process. The executive defendants do not challenge jurisdiction.

Plaintiffs maintain jurisdiction is proper under 28 U.S.C. § 1331, which reads: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." (Complaint at 3, ¶ 9.) Because the central issue in this case involves an Amendment to the Constitution, 28 U.S.C. § 1331 applies. (*Id.*)

For the existence of personal jurisdiction over a defendant, there must be "a constitutionally sufficient relationship between the defendant and the forum." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). In addition, service of summons on the defendant must be authorized under Rule 4 of the Federal Rules of Civil Procedure. *Id.* Rule 4(e) defines jurisdiction, declaring that the law of the state in which the federal district court is located controls the district court's personal jurisdiction. *Wenz v. Memery Crystal,* 55 F.3d 1503, 1506 (10th Cir.1995). If the defendant falls under applicable state law, the district court then determines if jurisdiction comports with due process requirements of the Constitution. *Id.* at 1507.

The Colorado law controlling jurisdiction is known as the long-arm statute. That statute applies Colorado jurisdiction to any person, whether or not a resident of Colorado, if the cause of action arises from the transaction of any business within the

state. Colo.Rev.Stat. § 13–1–124 (1998). Defendants argue non-resident government officials who do not perform their work in, or travel to, Colorado, are not subject to Colorado's long-arm statute. *See First Western Gov't. Securities, Inc. v. U.S.,* 578 F.Supp. 212, 215 (D.Colo.1984), *aff'd,* 796 F.2d 356 (10th Cir.1986). Both the Clerk of the House and the Secretary of the Senate perform their jobs in Washington, D.C. They do not transact business in Colorado.

■ Legislative defendants then offer arguments that jurisdiction in Colorado would violate their constitutionally guaranteed due process rights. To meet due process in Colorado, a plaintiff must satisfy a three-prong test: 1) The defendant must avail himself of the privilege of acting in Colorado; 2) the claim must arise from consequences in Colorado of the defendant's activities; and 3) the defendant's activities or their consequences must have a substantial enough connection with Colorado to make jurisdiction reasonable. *Plus System, Inc. v. New England Network, Inc.,* 804 F.Supp. 111, 117 (D.Colo. 1992). Generally, due process is satisfied through the establishment of minimum contacts in the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

■ Defendant Sisco cites various authorities, including a ruling from the Eighth Circuit, to argue that payment alone, through the use of bank facilities, is not enough to satisfy the requirements of due process. *See, e.g., T.J. Raney & Sons v. Security Sav. & Loan Ass'n,* 749 F.2d 523, 525 (8th Cir.1984) (per curiam). If the legislative defendants injured Congressman Shaffer through their involvement in paying congressional salaries, they have not established minimum contacts

with Colorado merely by transferring money to banks in Colorado.

Plaintiffs answer these arguments with a general recitation of Rule 82 of the Federal Rules of Civil Procedure: "These rules shall not be construed to extend or limit the jurisdiction of the United States district courts...." Fed.R.Civ.P. 82. Plaintiffs fail to show how defendants have used Rule 4 to extend or limit the jurisdiction of the court. Rather, defendants show Rule 4 works along with 28 U.S.C. 1331 to *define* jurisdiction. Plaintiffs also argue defendants are representatives of the United States, which invested $2,152,961,000 in Colorado in 1998. Contributing over two billion dollars to Colorado establishes minimum contacts with Colorado, according to the plaintiffs. Defendants reply that consequences in Colorado of acts performed by remote defendants are insufficient to establish personal jurisdiction over that plaintiff unless the plaintiff can show "an action of the defendant purposefully directed toward the forum State." *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

Plaintiffs fail to show the legislative defendants can be reached by Colorado's long-arm statute. Beyond that, defendants raise valid objections to personal jurisdiction on due process grounds, claiming that the plaintiffs fail to meet Colorado's three-prong test and that the defendants do not have sufficient minimum contacts to reasonably expect they would be haled into court in Colorado. I cannot exercise personal jurisdiction over the legislative defendants.

### III. VENUE

Plaintiffs state venue in Colorado is correct under 28 U.S.C. § 1391(e). As with the jurisdiction issue, the executive branch defendants, President Clinton and Treasury Secretary Rubin, do not contest venue. As with the issue of jurisdiction, the legislative defendants advance mutually similar arguments against venue, contend-

ing 28 U.S.C. § 1391(e) is not applicable to the legislative branch. Plaintiffs respond that 28 U.S.C. § 1402(a)(1), governing civil actions under 28 U.S.C. § 1346, applies to legislative defendants. The legislative defendants offer substantial authority that 28 U.S.C. § 1402(a)(1) does not apply in this case.

Plaintiffs state simply: "Venue is proper in the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1391(e)." (Complaint at 3, ¶ 10.) The federal statute provides in pertinent part:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under cover of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which ... (3) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e). The legislative defendants contest venue with two arguments. First, they claim 28 U.S.C. § 1391(e) is inapplicable to the legislative branch. The legislative history of § 1391(e) indicates it was meant to control venue in cases against the executive branch only. Legislative history reveals the limited staff of Congress, working predominantly in Washington, D.C., would be disrupted if forced to defend civil actions in locations other than Washington. The executive branch, with its larger staff and agencies in widespread locations, is better prepared to appear in district courts around the country. *See Liberation News Service v. Eastland,* 426 F.2d 1379, 1384 (2d Cir.1970).

Second, defendants contend, the appropriate standard for venue is found in 28 U.S.C. § 1391(b), which states: "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in ... (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred

...." Defendants maintain the only appropriate venue for this action is the District Court for the District of Columbia. They cite a Northern District of New York case holding the proper venue under 28 U.S.C. § 1391(a) in an action against state officials to be the district where the state official maintained his official residence. *See Neville v. Dearie,* 745 F.Supp. 99, 102 (N.D.N.Y.1990). That court went on to state defendants who are federal officials have traditionally fallen under the same rule. *Id.* The official residence of a federal official is defined as the place where that official performs his official duties. *Id.* From this, the legislative defendants reason the only proper venue under 28 U.S.C. § 1391 is the district court where the defendants perform their official duties, the District of Columbia. The legislative defendants refer to several cases, including *Humphrey* and *Boehner,* which involved challenges to congressional pay, and which were filed and decided in the D.C. District. Because the instant case involves action by federal officials in the course of their duties, the District of Columbia is the appropriate venue.

■ Plaintiffs appear to find this argument plausible. Even though they agree that § 1391(e) is appropriate to establish venue against the executive defendants, they claim venue against the legislative defendants is proper under 28 U.S.C. § 1402(a)(1). That statute controls venue in actions under 28 U.S.C. § 1346, the Tucker Act. The Tucker Act grants original jurisdiction to U.S. District Courts in a constitutionally based civil claim for damages against the United States of $10,000 or less.

The legislative defendants reply that the Tucker Act applies only to actions for money judgments, and not to suits in equity, seeking injunctive relief. See *Richardson v. Morris,* 409 U.S. 464, 465, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973). Because this is a suit in equity, and does not seek a financial award by the court, venue is improper under 28 U.S.C. § 1402.

Plaintiffs have failed to establish the District of Colorado is the appropriate venue for this action against the legislative defendants. Instead, the legislative defendants have shown that venue is improper in Colorado and that the District of Columbia is the proper venue.

## IV. RIPENESS

■ An immutable requirement of a case or controversy is ripeness. To show the case is ripe for adjudication, a plaintiff must allege an injury that is present or direct and imminent, not speculative or contingent upon future events. *New Mexicans for Bill Richardson*, 64 F.3d at 1499. Legislative defendants argue this case is not ripe because the complaint does not identify which COLA injured the plaintiff.

■ Plaintiffs respond the case is ripe because the automatic mechanism operating the COLAs can adjust congressional pay at any time in the future. Additionally, plaintiffs argue that the COLAs in 1992, 1993, and 1998 caused them injury. Of these, only the most recent—in 1998—could be considered injurious to plaintiff Shaffer. The first COLA, in 1992, was effective before the ratification of the Twenty-seventh Amendment. The plaintiffs may as well argue that the Salary Act of 1873 did not comport with the Twenty-seventh Amendment. The argument fails because the Twenty-seventh Amendment was not part of the Constitution at the time the injury was alleged to have taken place.

■ The next COLA, in 1993, also did not injure Congressman Shaffer, because he was not a member of Congress until 1997. Shaffer's alleged injury, damage in the eyes of his constituents resulting from illegal pay raises, could not have preceded his tenure as a congressman. Only the most recent COLA, effective in January of 1998, had any effect on Congressman Shaffer.

■ Plaintiffs stop short of targeting a single COLA as the source of their injury. Their suggestion that the formula currently in effect to calculate future congressional pay adjustments operates to create a direct, imminent injury is exactly the kind of complaint that the ripeness requirement prevents. *Boehner*, however, was filed and decided in 1992, before the first COLA that followed the Amendment. Neither the district court, nor the court of appeals, dismissed the complaint in *Boehner* on ripeness grounds. The ripeness discussion in *Boehner* centered on another provision of the Ethics Reform Act, quadrennial pay adjustments to members of Congress. The instant complaint states plaintiffs' injuries are limited to COLAs, without mention of the quadrennial pay increases. (Complaint at 5.) The ripeness discussion in *Boehner* is thus inapplicable. If Congressman Shaffer was injured, it was by the 1998 COLA. Such an injury would be ripe for adjudication.

## V. FAILURE TO STATE A CLAIM— FED.R.CIV.P. 12(b)(6)

Defendants from the House, the Senate, and the executive branch assert essentially common arguments that the complaint fails to state a claim upon which relief may be granted. A Rule 12(b)(6) dismissal is appropriate only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Gaines–Tabb v. ICI Explosives, USA, Inc.*, (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

■ The core argument is that the annual COLAs provided by the Ethics Reform Act of 1989 are not independent laws under the Twenty-seventh Amendment. Additionally, defendants propose pensions are not controlled by the Twenty-seventh Amendment and the Amendment's legislative purpose is not served by the maintenance of this lawsuit. Plaintiffs gainsay defendants' Rule 12(b)(6) arguments, claiming that the 27th Amendment does control COLAs and that the legislative

purpose is, in fact, served through this action.

Defendants begin by establishing that a COLA is not a law. Article I, Section 7 of the Constitution defines the framework and sequence for the flow of bills through Congress and to the President. Article I provides new laws are enacted when a bill passed by each House of Congress is signed by the President. Following this logic, a formula to create annual salary adjustments does not create a new law with each adjustment since the adjustments are not contingent upon passage by Congress and the President's signature.

Defendants assert the language and history of the Ethics Reform Act of 1989 anticipated the ratification of Twenty-seventh Amendment. The structure and timetable of the pay raises was in keeping with the spirit of the Amendment; the first COLA was not to take effect until 1991, even though the law was enacted in 1989. Between the enactment of the law in 1989 and the first effective COLA in 1991 was an intervening election of Representatives in 1990. Defendants argue what went into effect in 1991 was the COLA mechanism, not merely a single COLA. They cite the D.C. Circuit's holding in *Boehner* in support of their contention that annual CO-LAs are not independent laws.

To clarify the effective date of the COLA provisions of the Ethics Reform Act, defendants cite several cases to show, absent provisions to the contrary, federal legislation becomes effective on the day it is enacted. *Air–Shields, Inc. v. Fullam,* 891 F.2d 63, 65 (3d Cir.1989); *United States v. Affleck,* 765 F.2d 944, 948 (10th Cir.1985). In the case of the Ethics Reform Act, however, specific language in the legislation deferred the effective date of the COLA mechanism until after the 1990 congressional election. This explicit language prescribing the effective date of one part of the Ethics Reform Act indicates the Act complied with the spirit of the Twenty-seventh Amendment even before the Amendment's ratification. In doing so, Congress clarified the Act did not take effect "until an election of Representatives (had) intervened."

Defendants maintain the rigid structure for determining congressional compensation advocated by plaintiffs has no constitutional or legal basis. Defendants point to *Humphrey v. Baker,* 848 F.2d 211, 215 (D.C.Cir.1988), which held Congress was within its Ascertainment Clause power in delegating administrative authority to adjust congressional salaries, as long as the procedures for adjusting the compensation were ascertained by law. Finally, and perhaps most persuasively, defendants cite *Boehner,* where Judge Ginsburg stated: "We see no reason whatsoever why the Congress cannot, for convenience, instead specify an index or formula with the same effect." *Boehner,* 30 F.3d at 162. Plaintiffs reply the Twenty-seventh Amendment controls *Humphrey,* not *vice versa.* Plaintiffs stop short, however, of demonstrating how the Amendment can be applied to *Humphrey,* and how such an application works in their favor.

Adjustments to congressional salaries under the Ethics Reform Act are not discretionary acts of Congress. The adjustments are calculations performed by nonlegislative administrative staff, following a specific formula provided by Congress in the Act. Members of Congress do not participate in the calculation of pay increases. In removing members of Congress from the pay adjustment process, the Ethics Reform Act accomplishes the goal of the Founding Fathers manifested in the Twenty-seventh Amendment. The Act eliminates the possibility that Congress will grant itself a new pay raise during its current session.

Defendants again raise the argument that the Twenty-seventh Amendment does not apply to congressional pensions. Plaintiffs offer no authority to show the Amendment does apply to pensions. As discussed previously, Congressman Shaffer does not receive a pension at this time.

Any claim regarding pensions must fail because 1) the Amendment does not cover pensions, and 2) Congressman Shaffer cannot present a ripe case involving a pension-based injury to himself.

## VI. BOEHNER V. ANDERSON

In *Boehner*, the D.C. Circuit granted summary judgment to the defendants, holding that the plaintiff's argument that COLAs are independent laws was not supportable. *Boehner*, 30 F.3d at 161–62. The court did not discuss venue or jurisdiction, presumably because venue and jurisdiction were not contested.

*Boehner* differs from the instant case in that it was filed in the district court for the District of Columbia, in which venue was appropriate and personal jurisdiction existed over the defendants. Consequently, *Boehner* did not confront several issues that justify granting a motion to dismiss in this case. Nevertheless, *Boehner* remains strongly persuasive with respect to the merits of this case.

*Boehner* held annual COLAs were not independent laws under the Twenty-seventh Amendment, and Congress is within its Ascertainment Clause authority to designate a formula for making scheduled congressional pay adjustments. *Id.* at 162. Plaintiffs have failed to demonstrate a flaw in the D.C. Circuit's reasoning. Further, plaintiffs in this case cannot show this case belongs in the District of Colorado.

## VII. CONCLUSION

For all the reasons set forth, I GRANT defendants' motions to dismiss and DENY plaintiffs' alternative motion for summary judgment. Accordingly,

IT IS ORDERED THAT this case is DISMISSED WITH PREJUDICE with each party to pay his own costs.