John BOEHNER, Appellant,

v.

Donnald K. ANDERSON, Clerk of the House; Martha S. Pope, Secretary of the Senate; William J. Clinton, President of the United States, Appellees.

No. 93–5009.

United States Court of Appeals, District of Columbia Circuit.

Argued May 9, 1994.

Decided July 29, 1994.

John Armor, Washington, DC, for appellant. With him on the briefs was Jerry William Boykin, Alexandria, VA.

Morgan J. Frankel, Asst. Senate Legal Counsel, Washington, DC, for appellees. With him on the brief for appellees President of the U.S. and Secretary of the Senate were Michael Davidson, Senate Legal Counsel, Ken U. Benjamin, Jr., Deputy Senate Legal Counsel, Claire M. Sylvia, Asst. Senate Legal Counsel, Eric H. Holder, Jr., U.S. Atty., and Douglas N. Letter, Atty., U.S. Dept. of Justice, Washington, DC. Stuart M. Gerson, Atty., U.S. Dept. of Justice, Washington, DC, entered an appearance.

On the brief for appellee Clerk of the House were Charles Tiefer, Acting General

Counsel, Michael L. Murray, Sr. Asst. Counsel, Richard P. Stanton, Asst. Counsel, Washington, DC. Steven R. Ross, Washington, DC, entered an appearance.

On the brief for amicus curiae Common Cause were Ronald J. Greene, Roger M. Witten, and Laura B. Ahearn, Washington, DC.

Before EDWARDS, GINSBURG, and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

John Boehner and 27 other Members of Congress, 108 defeated congressional candidates, and 14 other individuals and organizations filed this suit against the Secretary of the Senate, the Clerk of the House of Representatives, and the President of the United States. The plaintiffs sought declaratory and injunctive relief on the ground that the provisions of the Ethics Reform Act that set up a mechanism for an annual cost of living adjustment (COLA) for Members of Congress and that establish the quadrennial pay raise system violate the newly ratified Twenty-seventh Amendment to the Constitution of the United States. The district court granted summary judgment to the defendants; 809 F.Supp. 138; the plaintiffs filed a notice of appeal but only Mr. Boehner's appeal was perfected. *See Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 318, 108 S.Ct. 2405, 2409, 101 L.Ed.2d 285 (1988) (Rule 3(c) of the Federal Rules of Appellate Procedure requires notice of specific individuals seeking to appeal); *Adkins v. Safeway Stores, Inc.,* 968 F.2d 1317, 1318–19 (D.C.Cir.1992) (appeal perfected only as to person whose name appears preceding *"et al."*).

On appeal Mr. Boehner renews his challenge to the Ethics Reform Act and adds an alternative challenge to the constitutionality of the law cancelling the congressional COLA scheduled for 1994. For the reasons stated below, we hold that the COLA provision of the Act does not violate the twenty-seventh amendment; that Mr. Boehner may not challenge the law eliminating the 1994 COLA for the first time on appeal; and that his challenge to the quadrennial pay mechanism is not ripe.

## I. BACKGROUND

The Ethics Reform Act of 1989 substantially revised the pay system for high-ranking government officials. Most relevant for the purpose of this appeal, the Act provided that each Representative would receive an immediate one-time salary increase and in subsequent years an annual COLA to his or her salary and pension. *See* Pub.L. No. 101–194, 103 Stat. 1716 (1989) (codified at 2 U.S.C. § 31(2) and 5 U.S.C. § 5318 note). Two years later the Congress enacted similar provisions for Senators. *See* Legislative Branch Appropriations Act, Pub.L. No. 102–90, § 6(a), 105 Stat. 447 (1991) (codified at 5 U.S.C. § 5318 note) (amending Ethics Reform Act of 1989 to remove exception for Senators).

The congressional COLA in any given year is one-half percent less than the annual percentage increase (if any) in the employment cost index (ECI) for the period ending December 31 of the previous year. Ethics Reform Act, § 704(a)(1)(B); 5 U.S.C. § 5318 note. (The ECI measures the change in wages and salaries paid to private sector employees. *See* BLS HANDBOOK OF METHODS 56 (1992).) The congressional COLA, however, is limited to a maximum of five percent per year, regardless of the change in the ECI. By automatic operation of the COLA provision, congressional salaries have been increased on the first day of January 1991, 1992, and 1993. In March 1993 the Congress voted to cancel the COLA scheduled to take effect on January 1, 1994. Pub.L. No. 103–6, § 7, 107 Stat. 35 (1993) (codified at 2 U.S.C. § 31 note).

The Ethics Reform Act also modified the quadrennial pay raise system first established by the 1967 Salary Act. A commission appointed every fourth year proposes to the President, for recommendation to the Congress, salary levels for certain Government officials, including Members of Congress. *See* 2 U.S.C. §§ 351–364. Prior to 1989 the President's recommendation was effective unless disapproved by the Congress. As

modified by the Ethics Reform Act, such quadrennial pay adjustments will not take effect unless enacted into law by the Congress, and then not until after a congressional election has been held. 2 U.S.C. § 359(2)(A) & (4)(A). The Congress cancelled the first quadrennial commission scheduled to operate under the modified scheme, *see* Treasury, Postal Service, and General Government Appropriations Act, 1994, Pub.L. No. 103–123, 107 Stat. 1226 (1993) (rescinding the commission's appropriation), so that in fact no quadrennial adjustment has yet been proposed, let alone implemented, under the new system.

Meanwhile, in May 1992 the twenty-seventh amendment to the Constitution was ratified by the concurrence of a thirty-eighth State. Known as the "Madison amendment," it was proposed to the Congress in 1789 by James Madison—along with eleven other amendments of which ten became the Bill of Rights—and provides in its entirety:

> No law, varying the compensation for services of the Senators and Representatives, shall take effect until an election of Representatives shall have intervened.

Six of the original thirteen States ratified the Madison amendment at the same time as the Bill of Rights; of the thirty-two other States that eventually ratified it, all but one did so after 1978, apparently in response to legislation affecting congressional compensation, including the 1977 salary increase, the elimination of recorded votes approving recommended COLAs, and the Ethics Reform Act. (Ohio, which ratified the amendment in 1873, did so in response to the "Salary Grab" Act of that year.) *See generally* Richard R. Bernstein, *The Sleeper Wakes: The History and Legacy of the Twenty–Seventh Amendment*, 61 FORDHAM L. REVIEW 518 (1992). According to Madison, and to all the ratifying states that stated their understanding, the purpose of the amendment is to ensure that a congressional pay increase "cannot be for the particular benefit of those who are concerned with determining the value of the service." James Madison, Speech in the House of Representatives (June 8, 1789), *in* The Congressional Register, June 8, 1789, *reprinted in* CREATING THE BILL OF RIGHTS: THE DOCUMENTARY RECORD FROM THE FIRST FEDERAL CONGRESS 84 (Helen E. Veit et al., eds., 1991). *See also* 138 Cong.Rec. S6836 (May 19, 1992) (documents supplementing remarks of Senator Byrd) (text of state resolutions concerning Madison amendment).

Shortly after the Madison amendment became part of the Constitution, Mr. Boehner *et al.* brought this action to challenge the constitutionality of the Ethics Reform Act. They claimed that the automatic operation of the COLA provision violates the amendment because it increases congressional pay without the necessity of an annual legislative act by the Congress and without an intervening election; and that the January 1 effective dates of both the COLA and any quadrennial pay adjustment violate the amendment because the Members who vote for them may benefit from them—i.e., because they are on the payroll until the new Congress is seated, which is some time later in January. The district court upheld the statute in all respects. On appeal Mr. Boehner presses all his original claims and additionally argues in the alternative that if the COLA provision of the Ethics Reform Act is constitutional, then the elimination in March 1993 of the COLA scheduled to take effect on January 1, 1994 violates the intervening election requirement of the twenty-seventh amendment.

## II. ANALYSIS

This appears to be the first case in which a court has been called upon to interpret the twenty-seventh amendment and its effect upon the pre-existing system for adjusting congressional pay. Before we can reach the merits of the case, however, we must attend to the argument of the President and the Secretary of the Senate that Mr. Boehner does not have standing to challenge the COLA and the quadrennial commission provisions of the Ethics Reform Act.

### A. Standing

A Member of Congress is, of course, like any plaintiff, subject to the standing requirements of Article III. *See, e.g., Reuss v. Balles,* 584 F.2d 461, 466 (D.C.Cir.1978) ("a legislator receives no special consideration in the standing inquiry").

Therefore, Congressman Boehner must show that he has suffered a distinct and palpable injury; that the injury is fairly traceable to the act of which he complains; and that the court may give a remedy that is likely to redress the injury. *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).

■ The President and the Secretary argue that Mr. Boehner lacks standing because his claim that the COLA and quadrennial pay adjustment provisions are unconstitutional, on the ground that they take effect before a new Congress convenes, states "no concrete and individualized injury" but is rather a generalized grievance about the conduct of government. They also argue that even if Mr. Boehner does have standing, then this court's doctrine of equitable discretion counsels against hearing his claim because the Congress could cure any legal defect in the operation of the COLA by enacting additional legislation. *See Humphrey v. Baker,* 848 F.2d 211 (D.C.Cir.1988). We do not agree with either point.

Mr. Boehner is not only a Member of Congress; by virtue of that office he is also an employee of the United States Government. As such, he clearly has standing to challenge the operation of a law that directly determines his rate of pay. His claim that his pay for 1993 was unconstitutionally increased (or alternatively that his pay for 1994 was unconstitutionally decreased) alleges a "distinct and palpable injury" to him in his capacity as an employee.

The Secretary of the Senate (alone) argues further that an increase in pay is not an injury. Mr. Boehner, however, says that in the context of his constituency it is. We do not think it the office of a court to insist that getting additional monetary compensation is a good when the recipient, a congressman, says that in his political position it is a bad.

■ Even when a Member of Congress meets all the requirements for standing to sue, as a matter of equitable discretion, the court will not entertain his or her complaint about a matter that is more properly addressed to the plaintiff's colleagues in the legislature. *See Humphrey,* 848 F.2d at 214 (quoting *Melcher v. Federal Open Market Committee,* 836 F.2d 561, 563 (D.C.Cir.1987)) (court will not hear "what amounts to a dispute properly within the domain of the legislative branch"); *Riegle v. Federal Open Market Committee,* 656 F.2d 873, 881 (D.C.Cir. 1981) ("Where a congressional plaintiff could obtain substantial relief from his fellow legislators through the enactment, repeal, or amendment of a statute, this court should exercise its equitable discretion to dismiss the legislator's action"); *cf.* Carl McGowan, *Congressmen in Court: The New Plaintiffs,* 15 GA.L.REV. 241 (1981) (laying out the approach later adopted in *Riegle* and followed in subsequent cases). We do not exercise our discretion to dismiss a case, therefore, when a congressman suffers an effective nullification of his vote, *see Goldwater v. Carter,* 617 F.2d 697, 702–03 (D.C.Cir.) (*en banc*), *vacated on other grounds,* 444 U.S. 996, 100 S.Ct. 533, 62 L.Ed.2d 428 (1979) (the Congress had no way to block the President's action terminating a treaty without Senate consent); *Kennedy v. Sampson,* 511 F.2d 430 (D.C.Cir.1974), or if his influence is substantially diminished. *See Moore v. United States House of Representatives,* 733 F.2d 946, 951–52 (D.C.Cir.1984) (where Senate originated revenue bill, Representative deprived of constitutionally guaranteed opportunity to debate and vote on same prior to Senate action); *Vander Jagt v. O'Neill,* 699 F.2d 1166 (D.C.Cir.1983) (minority party congressmen have standing to challenge dilution of influence when assigned less than proportionate number of committee seats).

■ Mr. Boehner's claim that the Ethics Reform Act unconstitutionally interferes with the amount and timing of his pay is a straightforward challenge to the constitutionality of a public law that directly affects his private interest as a government employee. He raises no "dispute properly within the domain of the legislative branch," *cf., e.g., Melcher,* 836 F.2d 561 (making FOMC members subject to Senate confirmation properly done by legislation rather than by judicial remedy); *Gregg v. Barrett,* 771 F.2d 539, 543–46 (D.C.Cir.1985) (congressman could persuade other members to insist upon en-

forcement of procedural rules), but a case or controversy quintessentially within the judicial power of the United States. *See Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803) ("It is, emphatically, the province and duty of the judicial department, to say what the law is"). Indeed, Mr. Boehner asserts an individualized injury no different in kind from the injury that an unelected employee of the House might assert, and we surely would not remit such a plaintiff to the legislative process for redress. *Compare Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (judicial review of unconstitutional discharge of congressman's administrative assistant) *and Walker v. Jones,* 733 F.2d 923 (D.C.Cir.1984) (judicial review of unconstitutional discharge of congressional food service employee) *with Browning v. Clerk of the United States House of Representatives,* 789 F.2d 923 (D.C.Cir.1986) (judicial review of personnel actions barred where duties of employee implicate speech or debate clause concerns). Accordingly, it would be an abuse of our equitable discretion not to hear Mr. Boehner's case.

### B. The COLA

■ Mr. Boehner contends that the annual COLA provision of the Ethics Reform Act violates the twenty-seventh amendment for two (not entirely distinct) reasons: (1) it establishes a procedure that changes his salary as a congressman without a vote of the Congress; and (2) viewing each COLA as in effect a new law, each such law varies his compensation, in violation both of the constitutional requirements for lawmaking in general and of the requirements of the twenty-seventh amendment in particular. Specifically, Mr. Boehner argues that each COLA is a law subject to the requirements of Article I, namely bicameral passage and presentment to the President; and that the COLA provision of the Act circumvents the intention underlying the twenty-seventh amendment because half of all annual COLAs (i.e., those in odd-numbered years) will take effect without an intervening election and, even when an election does intervene (i.e., in even-numbered years), the electorate cannot know what the compensation of its Representatives will be in the second year of the Congress for which it votes because the second year's COLA will be based upon the ECI for the period ending on the last day of the election year. *See* 5 U.S.C. § 5318 note.

Neither of Mr. Boehner's arguments that the COLA provision is unconstitutional draws any support from either the original Constitution or from the twenty-seventh amendment. The Constitution does not define a law except to say (at least implicitly) that it is the product of the legislative process:

> Every Bill which shall have passed the House of Representatives and the Senate shall, before it becomes a Law, be presented to the President of the United States; If he approve he shall sign it.... If any Bill shall not be returned by the President within ten Days ..., the Same shall be a Law, in like Manner as if he had signed it, ....

U.S. CONST., Art. 1, § 7, cl. 2. The Ethics Reform Act became a law on November 30, 1989 when, the bill having passed both Houses and been presented to President Bush, he signed it into law. *See Gardner v. The Collector,* 79 U.S. 499, 504, 506 (1867). The provision calling for an annual COLA is part of that 1989 law. *Cf. Pressler v. Simon,* 428 F.Supp. 302 (D.D.C.1976) (three-judge court), *aff'd sub nom Pressler v. Blumenthal,* 434 U.S. 1028, 98 S.Ct. 758, 54 L.Ed.2d 776 (1978) (automatic increases under the Executive Salary Cost-of-Living Adjustment Act of 1975 "fix congressional compensation by law").

Mr. Boehner, recognizing that in order to comply with the twenty-seventh amendment a law varying congressional compensation must be passed before an election yet the compensation may not be adjusted until after the election, argues that the phrase "shall take effect" in the Madison amendment must refer to the date upon which the "payment of the [COLA or quadrennial] raise" first occurs, not the effective date of the statute. From this Mr. Boehner would have the court infer that each COLA must be a separate "law varying the compensation" of the Members of Congress. Our understanding of the

Madison amendment is a bit different, however; in essence it conditions the operation of a law varying congressional compensation upon an election of Representatives and the expiration of the Congress that voted for it. The law may be enacted at any time; when an election has been held the first condition is fulfilled; when the new Congress is seated the second condition is fulfilled. Therefore, the law, although duly enacted pursuant to Article I, does not "take effect" at the earliest until the new Congress has been seated. The minimum period between enactment and effect is from the first Monday in November of an even-numbered year (i.e., the Monday before an election) until the new Congress is seated the following January; but the interim could be greater, as long as it brackets an election. Accordingly, the present Congress could specify the salary of the next Congress or of any Congress after that. For example, the COLA provision became law in 1989 but the first COLA would not be made until more than a year later, on January 1, 1991—pursuant to the Congress's decision, prior to but in the spirit of the Madison amendment, to defer implementation of the COLA until after the 1990 congressional election. *See* Ethics Reform Act, § 704(b) (codified at 5 U.S.C. § 5318 note) (COLA provisions "shall take effect on January 1, 1991"). We see no reason whatsoever why the Congress cannot, for convenience, instead specify an index or formula with the same effect.

In sum, it has been the law since 1989 that a COLA would be made on January 1, 1991 and each year thereafter pursuant to a specified formula. Therefore, assuming with the plaintiffs (for the defendants do not dispute it) that the twenty-seventh amendment applies to a law passed before the amendment was ratified, the COLA provision of the Ethics Reform Act of 1989 is constitutional because it did not cause any adjustment to congressional compensation until after the election of 1990 and the seating of the new Congress.

### C. The Act of March 4, 1993

█ Mr. Boehner argues that if, as we hold, the COLA provision is constitutional, then the Act of March 4, 1993, the Emergency Unemployment Compensation Amendments of 1993, Pub.L. No. 103–6, § 7(a) (codified at 2 U.S.C. § 31 note), cancelling the 1994 COLA violates the Madison amendment because it varies his compensation without an intervening election of Representatives. In other words, prior to March 4 the law was that Members would receive a COLA the following January 1. The new law varied their compensation as of January 1, 1994 without an election of Representatives having intervened.

For their part, the defendants object that Mr. Boehner should not be allowed to raise this issue for the first time on appeal. The President and the Secretary of the Senate argue further that Mr. Boehner could not prevail on the merits in any case because legislation foregoing a COLA is not a "law varying compensation" of the Members of Congress, but rather a law extending the period during which their compensation remains unchanged. (The defendants do not argue that a law decreasing congressional compensation is outside the intended reach of the Madison amendment, see Madison's statement quoted above, and we express no opinion upon that possibility.)

█ Although we have the authority to rule upon a question of law not considered by the district court, *see Hormel v. Helvering,* 312 U.S. 552, 557, 61 S.Ct. 719, 85 L.Ed. 1037 (1941), this court has consistently refused to hear any claim upon which the district court has not had an opportunity to rule. *See District of Columbia v. Air Florida, Inc.,* 750 F.2d 1077, 1084–85 (D.C.Cir.1984). In this case, Mr. Boehner presents no issue warranting a departure from our normal practice.

When the Act of March 4, 1993 became law Mr. Boehner had already noted his appeal in this case. There was no obstacle, however, to his filing another case in district court challenging the new law (and if appropriate, seeking expedition of that case in the district court or moving to have the present case held in abeyance in the court of appeals until the later-filed case was appealed). Perhaps he believed that we would consider his after-arising claim merely because it involves a change in the law relating to the subject of his pending appeal. *See United States v.*

*Reyes–Alvarado,* 963 F.2d 1184, 1189 (9th Cir.1992). In this case, however, the new claim is premised upon a debatable factual assertion more properly considered in the first instance by the trier of fact.

In particular, Mr. Boehner's claim that the 1993 law cancelling the 1994 COLA is unconstitutional implicitly rests upon a theory of standing diametrically opposed to the theory underlying his challenge to the Ethics Reform Act of 1989. His challenge to that Act depends upon his representation to the court that a pay increase is, in his particular circumstance, an injury. Can a pay decrease also be an injury to him, then? Perhaps, but we will not simultaneously entertain seemingly contradictory factual claims of injury without allowing the appellees an opportunity to test the afterthought that creates the contradiction—and that can be done only in district court.

### D. *The Quadrennial Pay Adjustment*

■ The Congress also provided in the Ethics Reform Act that a presidential recommendation arising from a quadrennial pay adjustment commission shall not take effect until it has been approved by an Act of Congress signed by the President (or otherwise become law) and an election of Representatives has thereafter been held, 2 U.S.C. § 359(2)(A) & (4)(A), but not before January 1 of the year following that election. 2 U.S.C. § 362(2) ("proposed effective date of a pay adjustment may occur no earlier than January 1 of the second fiscal year" following the year in which the Commission makes its proposal). Mr. Boehner challenges this system as a violation of the twenty-seventh amendment because it would permit a pay adjustment to take effect before the Congress that approved it has expired, so that a member of that Congress may benefit from it.

We decline to rule upon the merits of this challenge, which is far from ripe. No quadrennial adjustment has been proposed or enacted; indeed, because the Congress cancelled the first quadrennial pay adjustment commission under the Ethics Reform Act, no such adjustment is scheduled to occur under the Act until 1999. *See* 2 U.S.C. § 352(8)(B).

Even then this claim will not be ripe until a Congress votes in an election year (i.e., in 1998 or an even-numbered year thereafter) to make a recommended pay adjustment effective prior to the seating of a new Congress, when the members of the enacting Congress could no longer benefit from the adjustment. The Act provides only that the pay adjustment may not occur earlier than the first day of January after an election, *see* 2 U.S.C. § 362(2); nothing in the Act or elsewhere prevents the Congress from making the quadrennial adjustment effective upon the seating of the new Congress later that month, thereby avoiding altogether the constitutional question Mr. Boehner would have us rush to resolve right now.

### III. CONCLUSION

For the foregoing reasons, we hold that Congressman Boehner has standing to challenge the congressional COLA provision of the Ethics Reform Act of 1989, and is not barred from doing so by this court's doctrine of equitable discretion; that because the annual COLA provision took effect after the 1990 election of Representatives it does not violate the twenty-seventh amendment; and that Mr. Boehner's challenge to the quadrennial pay raise provision is not yet ripe. We do not consider Mr. Boehner's claim, raised for the first time on appeal, that the 1993 legislation eliminating the 1994 COLA for the Congress violates the twenty-seventh amendment. The judgment of the district court is therefore in all respects

*Affirmed.*