**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80257**
**(303) 844-3157**

Patrick J. Fisher, Jr.                                                      Jane B. Howell
Clerk                                                                  Chief Deputy Clerk

March 29, 2001


**TO:**  ALL RECIPIENTS OF THE OPINION

**RE:**  99-1385, *Schaffer, et al. v. Clinton, et al.*
      240 F.3d 878
      Filed on February 13, 2001

      Please note the following corrections to the court's slip opinion:

1. On page one, in the caption, appellant Schaffer's last name was misspelled as "Schaeffer."  The correct spelling is "Schaffer."

2. One page two, the attorney section for appellees Clinton, Rubin and Sisco, is corrected to read as follows:

   Douglas N. Letter, Appellate Litigation Counsel, United States Department of Justice (David W. Ogden, Acting Assistant Attorney General, United States Department of Justice, Patricia M. Bryan, Senate Legal Counsel, Morgan J. Frankel, Deputy Senate Legal Counsel, Steven F. Huefner, Assistant Senate Legal Counsel, and Allison Moore, Assistant Senate Legal Counsel, with him on the brief), Washington, D.C., for Defendants-Appellees William Jefferson Clinton, Robert E. Rubin and Gary Sisco.

3. On page two, footnote one is corrected to read as follows:

   The other appellants in this case, who were dismissed for lack of standing, waived their arguments on appeal by failing to address the district court's ruling regarding their standing.

A corrected copy of the opinion is attached.

Sincerely,

Patrick Fisher, Clerk of Court


By:   Keith Nelson
        Deputy Clerk

encl.

**F I L E D**
United States Court of Appeals
Tenth Circuit

**FEB 13 2001**

**PATRICK FISHER**
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

THE HONORABLE BOB
SCHAFFER, in his official capacity as
a member of the United States House
of Representatives; WALT
MUELLER, a Missouri State Senator;
JOHN R. STOEFFLER, a United
States taxpayer; GREGORY D.
WATSON, a United States taxpayer
and National Coordinator of the
Political Movement to Ratify the 27th
Amendment,

      Plaintiffs - Appellants,

v.

WILLIAM JEFFERSON CLINTON,
President of the United States of
America, in his official capacity;
ROBERT E. RUBIN, Secretary of the
Treasury, in his official capacity;
GARY SISCO, Secretary of the United
States Senate, in his official capacity;
JEFF TRANDAHL, Clerk of the
United States House of
Representatives, in his official
capacity,

      Defendants - Appellees.

No. 99-1385

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 99-K-201)**

William Perry Pendley (D. Andrew Wight with him on the briefs), Mountain States Legal Foundation, Denver, Colorado, for the Plaintiffs-Appellants.

Kerry W. Kircher, Deputy General Counsel (Geraldine R. Gennet, General Counsel, with him on the brief), Office of the General Counsel U.S. House of Representatives, Washington, D.C., for Defendant-Appellee Jeff Trandahl.

Douglas N. Letter, Appellate Litigation Counsel, United States Department of Justice (David W. Ogden, Acting Assistant Attorney General, United States Department of Justice, Patricia M. Bryan, Senate Legal Counsel, Morgan J. Frankel, Deputy Senate Legal Counsel, Steven F. Huefner, Assistant Senate Legal Counsel, and Allison Moore, Assistant Senate Legal Counsel, with him on the brief), Washington, D.C., for Defendants-Appellees William Jefferson Clinton, Robert E. Rubin and Gary Sisco.

Before **LUCERO**, **McKAY** and **MURPHY**, Circuit Judges.

**LUCERO**, Circuit Judge.

Bob Schaffer, a United States Congressman, appeals [1] the district court's dismissal of a challenge, on Twenty-Seventh Amendment grounds, to the Cost of Living Adjustment ("COLA") provision of the Ethics Reform Act of 1989. Because we determine that appellant does not have standing to sue, we do not reach the merits of the appeal, namely, whether the district court erred in holding that the COLA provision of the Ethics Reform Act does not violate the Twenty-Seventh Amendment to the Constitution and that the COLA provision is not an

---

[1] The other appellants in this case, who were dismissed for lack of standing, waived their arguments on appeal by failing to address the district court's ruling regarding their standing.

unconstitutional delegation of Congress's legislative authority. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the judgment of the district court.

## I

The Twenty-Seventh Amendment to the United States Constitution provides that "[n]o law, varying the compensation for the services of the Senators and Representatives, shall take effect, until an election of Representatives shall have intervened." The so-called "compensation amendment" was originally proposed in the First Congress on June 8, 1789, by James Madison. See Richard B. Bernstein, The Sleeper Wakes: The History and Legacy of the Twenty-Seventh Amendment , 61 Fordham L. Rev. 497, 498 (1992). It was one of twelve proposed constitutional amendments, ten of which became the Bill of Rights. See id. at 530–32. Between 1789 and 1791, the amendment was ratified by six states and rejected by five and thus was not adopted. See id. In response to the "Salary Grab" Act of 1873, however, Ohio ratified the amendment in that year; after a congressional pay increase, Wyoming followed suit in 1978. See id. at 534, 537. Finally, as the result of the efforts of a self-financed campaign by one of the named parties in this case, Gregory D. Watson, [2] thirty-three additional states

---

[2] Watson, while a sophomore economics major at the University of Texas at Austin in 1982, wrote a paper on the compensation amendment, arguing that

(continued...)

ratified the amendment between 1983 and 1992, after which Congress on May 20, 1992, approved the amendment as the Twenty-Seventh Amendment to the Constitution.   See id. at 537–38, 542. [3]

The Ethics Reform Act of 1989, Pub. L. No. 101-194, 103 Stat. 1716, established automatic annual COLAs pegged to the rate of change in the Employment Cost Index minus one-half of a percent.    [4]  The Act's COLA provision

---

[2](...continued)
"the 1789 amendment was still validly before the states principally because, unlike most recent proposed amendments, it has no internal time limit."  Richard B. Bernstein, The Sleeper Wakes: The History and Legacy of the Twenty-Seventh Amendment, 61 Fordham L. Rev. 497, 537 (1992).  His paper urged that the amendment be ratified by the necessary number of remaining states and adopted. See id.  "But Watson received only a 'C' from his instructor, who told him that the Amendment was a dead letter and never would become part of the Constitution."  Id.

[3]  Although appellees do not challenge its validity, there is a lively debate about the Twenty-Seventh Amendment's adoption and legitimacy because of the long period of time between the amendment's proposal in 1789 and its ratification by two-thirds of the states in 1992.  See, e.g., Stewart Dalzell & Eric J. Beste, Is the Twenty-Seventh Amendment 200 Years Too Late?, 62 Geo. Wash. L. Rev. 501 (1994); Sanford Levinson, Authorizing Constitutional Text: On the Purported Twenty-Seventh Amendment, 11 Const. Comment. 101 (1994); Michael Stokes Paulsen, A General Theory of Article V: The Constitutional Lessons of the Twenty-Seventh Amendment, 103 Yale L.J. 677 (1993); JoAnne D. Spotts, Note, The Twenty-Seventh Amendment: A Late Bloomer or a Dead Horse?, 10 Ga. St. U. L. Rev. 337 (1994).  Because the argument was not raised, it is not before this Court.  See Hernandez v. Starbuck, 69 F.3d 1089, 1093 (10th Cir. 1995).

[4]  As codified, the Ethics Reform Act provides:

(1) A provision of law increasing the rate of pay payable for an office or position within the purview of subparagraph (A), (B), (C), or (D) of section 356
(continued...)

became effective on January 1, 1991, following an intervening election of Representatives.

Claiming the congressional COLA provisions of the Ethics Reform Act violate the Twenty-Seventh Amendment, four plaintiffs initiated this challenge: (1) Congressman Bob Schaffer, who represents a Colorado district in the House of Representatives; (2) Walt Mueller, who as "a Missouri State Senator . . . voted to adopt the 27th Amendment"; (3) Watson, a "United States taxpayer and National Coordinator of the Political Movement to Ratify the 27th Amendment";

---

[4](...continued)
of this title shall not take effect before the beginning of the Congress following the Congress during which such provision is enacted.

(2) For purposes of this section, a provision of law enacted during the period beginning on the Tuesday following the first Monday of November of an even-numbered year of any Congress and ending at noon on the following January 3 shall be considered to have been enacted during the first session of the following Congress.

(3) Nothing in this section shall be considered to apply with respect to any pay increase—

(A) which takes effect under the preceding sections of this chapter;

(B) which is based on a change in the Employment Cost Index (as determined under section 704(a)(1) of the Ethics Reform Act of 1989) or which is in lieu of any pay adjustment which might otherwise be made in a year based on a change in such index (as so determined); or

(C) which takes effect under section 702 or 703 of the Ethics Reform Act of 1989.

2 U.S.C. § 364.

Although provisions of the Ethics Reform Act affect the salaries of federal judges, we can decide this appeal under the Rule of Necessity. See United States v. Will, 449 U.S. 200, 213–17 (1980).

and (4) John Stoeffler, "a United States taxpayer." (Appellants' App. at 10.) Congressman Schaffer, who has served in Congress since 1997, received a COLA in 1998 and 2000. He claims that these COLAs, as well as the 1992 and 1993 COLAs, are unconstitutional.

In a memorandum opinion and order, the district court held that except for Congressman Schaffer the plaintiffs lacked standing to challenge the congressional COLA provisions of the Ethics Reform Act. Watson, Stoeffler, and Mueller did not have standing to sue as taxpayers because their case did not involve "acts of Congress under its taxing and spending authority when those acts implicate the Establishment Clause of the Constitution." Schaffer v. Clinton, No. 99-K-201, slip op. at 3–4 (D. Colo. July 2, 1999) (citing United States v. Richardson, 418 U.S. 166 (1974); Flast v. Cohen, 392 U.S. 83 (1968)). Furthermore, Mueller could not sue as a voter in congressional elections because his claim amounted to a "non-particularized constitutional violation." Id. at 4. With respect to Congressman Schaffer, the district court noted that his salary was directly affected by the COLAs, but it did not expressly hold he had standing to sue. Id. at 5–7.

In addition, the district court held that all of the defendants were improper parties because Congressman Schaffer's injury was not caused, and could not be resolved, by them. Id. at 8–10. The court also determined that it lacked personal

- 6 -

jurisdiction over the legislative branch defendants and that Colorado was not the proper venue. See id. at 10–15.

On the merits, the court held that the COLAs did not violate the Twenty-Seventh Amendment because they went into effect after an intervening election of Representatives and that the COLAs were not independent laws under the Amendment because they are not discretionary acts of Congress. See id. at 17–19. According to the court, the COLAs "accomplish[] the goal of the Founding Fathers manifested in the Twenty-seventh Amendment" because they "eliminate[] the possibility that Congress will grant itself a new pay raise during its current session." Id. at 19.

On appeal, appellants challenge only the district court's determination on the merits. We cannot proceed to the merits, however, without first deciding whether Congressman Schaffer had standing to sue.

## II

The judicial power of federal courts extends only to actual cases and controversies. See U.S. Const. art. III, § 2; Allen v. Wright, 468 U.S. 737, 750 (1984).

> [T]he "case or controversy" requirement defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded. The several doctrines that have grown up to elaborate that requirement are "founded in concern about the proper—and properly limited—role of the courts in democratic society."

<u>Allen</u>, 468 U.S. at 750.  Perhaps the most important of the several jurisdictional

doctrines is that of standing.   <u>FW/PBS, Inc. v. City of Dallas</u>, 493 U.S. 215, 230

(1990) ("The federal courts are under an independent obligation to examine their

own jurisdiction, and standing 'is perhaps the most important of [the

jurisdictional] doctrines.'" (quoting    <u>Allen</u>, 468 U.S. at 750)). [5]

As is now well-settled, the elements of standing are three:

> "First, the plaintiff must have suffered an 'injury in fact'—an
> invasion of a legally protected interest that is (a) concrete and
> particularized, and (b) actual or imminent, not conjectural or
> hypothetical.  Second, there must be a causal connection between the
> injury and the conduct complained of. . . .  Third, it must be likely, as

---

[5]  Admittedly, the standing doctrine is a confusing one.  As the Supreme
Court recognized in <u>Valley Forge Christian College v. Americans United for
Separation of Church and State, Inc.</u>, 454 U.S. 464, 475 (1982),

> We need not mince words when we say that the concept of "Art. III
> standing" has not been defined with complete consistency in all of
> the various cases decided by this Court which have discussed it, nor
> when we say that this very fact is probably proof that the concept
> cannot be reduced to a one-sentence or one-paragraph definition.

<u>See also</u> 13 Charles Alan Wright et al., <u>Federal Practice and Procedure</u> § 3531, at
347 (2d ed. 1984) ("However reassuring it may seem to describe the elements of
standing in . . . brief phrases, the doctrines have changed continually in recent
years.  Even at any single moment, there are almost unlimited opportunities to
disagree in applying the currently fashionable phrases.  Several years ago, Justice
Douglas observed that '[g]eneralizations about standing to sue are largely
worthless as such.'" (quoting <u>Ass'n of Data Processing Serv. Orgs. v. Camp</u>, 397
U.S. 150, 151 (1970)).

opposed to merely speculative, that the injury will be redressed by a favorable decision."

United States v. Hays, 515 U.S. 737, 742–43 (1995) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992) (footnote, citations, and internal quotations omitted)) (further citations omitted). The standing inquiry must be "especially rigorous when reaching the merits of the dispute would force us to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." Raines v. Byrd, 521 U.S. 811, 819–20 (1997).

> [T]he law of Art. III standing is built on a single basic idea—the idea of separation of powers. In the light of this overriding and time-honored concern about keeping the Judiciary's power within its proper constitutional sphere, we must put aside the natural urge to proceed directly to the merits of this important dispute and to "settle" it for the sake of convenience and efficiency. Instead, we must carefully inquire as to whether [plaintiffs] have met their burden of establishing that their claimed injury is personal, particularized, concrete, and otherwise judicially cognizable.

Id. at 820 (internal quotation, citations, and footnote omitted).

In its starkest terms, the standing inquiry requires the Court to ask not only whether an injury has occurred, but whether the injury that has occurred may serve as the basis for a legal remedy in the federal courts.

> A federal court cannot pronounce any statute, either of a state or of the United States, void, because irreconcilable with the constitution, except as it is called upon to adjudge the legal rights of litigants in actual controversies. Have the appellants alleged such a personal stake in the outcome of the controversy as to assure that concrete

adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions? This is the gist of the question of standing. It is, of course, a question of federal law.

Baker v. Carr, 369 U.S. 186, 204 (1962) (internal quotation and citation omitted). Although the standing question is often dressed in the dazzling robe of legal jargon, its essence is simple—what kind of injuries are courts empowered to remedy and what kind are they powerless to address? Our cold-eyed duty is to determine which category catalogs the present case. We start with Congressman Schaffer's representations about the injury he suffered.

The first element of the standing inquiry—whether Congressman Schaffer has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical—gives us pause. It is Congressman Schaffer's burden, as "the party who seeks the exercise of jurisdiction in his favor[,] clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." Hays, 515 U.S. at 743 (internal quotations and citations omitted). We "will not craft [his] arguments for him," Perry v. Woodward, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999), cert. denied, 120 S. Ct. 1964 (2000), and thus we evaluate only the basis for standing offered by Congressman Schaffer.

Congressman Schaffer asserts standing to bring the present action on the ground that "his salary as a Member of the House of Representatives is paid from

- 10 -

the treasury in amounts unconstitutionally adjusted, which is personally offensive and professionally harmful to [him], as well as damaging to his political position and his credibility among his constituency." (Appellants' Reply Br. at 1.) We examine that claim in its several parts and as a whole to determine whether Congressman Schaffer has met his burden of demonstrating standing. See Hays, 515 U.S. at 743.

The first portion of Congressman Schaffer's standing claim revolves around the asserted unconstitutionality of the congressional COLA provision. This argument is a statement of Congressman Schaffer's view of the merits of this case, and no more. The ultimate question of whether the congressional COLAs are unconstitutional is distinct from the antecedent issue of whether Congressman Schaffer has standing. See Arizonans for Official English v. Arizona, 520 U.S. 43, 66–67 (1997) (noting that the question of standing "goes to the Article III jurisdiction of this Court and the courts below, not to the merits of the case"); Cook v. Reno, 74 F.3d 97, 99 (5th Cir. 1996) ("[T]he ultimate merits of the suit are not a consideration when deciding standing."). We therefore turn to his allegations that the COLAs are "personally offensive and professionally harmful to [him], as well as damaging to his political position and his credibility among his constituency." (Appellants' Reply Br. at 1.)

**A**

Congressman Schaffer's allegation that the challenged COLAs are personally offensive to him does not establish his standing to sue. As the Supreme Court stated in Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 485–86 (1982), "the psychological consequence presumably produced by observation of conduct with which one disagrees . . . is not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms." Valley Forge involved a First Amendment challenge to the sale of government property to a self-professed Christian educational institution pursuant to a federal statutory scheme providing for the sale or lease of "surplus" government property to non-profit educational institutions. Id. at 466–68. Upon learning of the sale, the Americans United For the Separation of Church and State, Inc., and four of its employees brought a suit to enjoin the sale, claiming that each member of the organization "would be deprived of the fair and constitutional use of his (her) tax dollar for constitutional purposes in violation of his (her) rights under the First Amendment of the United States Constitution." Id. at 469. Relying on Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208 (1974), and United States v. Richardson, 418 U.S. 166 (1974), the Court held that the complaint failed to allege any consequences of the allegedly unconstitutional sale other than the psychological effects of that disagreement, and therefore that there

was no "injury sufficient to confer standing under Art. III."      Valley Forge , 454 U.S. at 485.

As in Valley Forge , "[i]t is evident that [appellant is] firmly committed to the constitutional principle" embodied in the Twenty-Seventh Amendment, "b      ut standing is not measured by the intensity of the litigant's interest or the fervor of his advocacy."   Id. at 485–86 .  Thus, Congressman Schaffer's moral outrage, however profoundly and personally felt, does not endow him with standing to sue in the present action.   [6]

**B**

As for his allegation that the challenged congressional COLAs are "professionally harmful" to him, Congressman Schaffer "complains of injury suffered in a personal capacity, caused by the fact that his employer pays him monies appropriated unconstitutionally from the Treasury."  (Appellants' Reply Br. at 5.)  The general notion that compensation of public officials has genuine constitutional significance and may furnish grounds for alleging an injury in fact is as old as the nation itself and precedes the ratification of the Twenty-Seventh Amendment.  We respect Alexander Hamilton's cautionary words in The Federalist No. 79 that "[i]n the general course of human nature, a power over a

_____

[6] We note that in Valley Forge the Supreme Court "[did] not retreat from [its] earlier holdings that standing may be predicated on noneconomic injury." Valley Forge, 454 U.S. at 486 (citations and footnote omitted).

- 13 -

man's subsistence amounts to a power over his will," but of course Hamilton was speaking of a _decrease_ in pay.   We do not see how Congressman Schaffer could have suffered an injury in fact by receiving a nominal (though not, in economic terms, a real) _increase_ in pay as a result of the 1998 COLA.  Congressman Schaffer has not suffered "palpable injury" that is "real" in any meaningful sense of the term, and for standing purposes he has alleged no "plausible benefit" that would inure to him should we decide in his favor.      Ash Creek Mining Co. v. Lujan, 969 F.2d 868, 875 (10th Cir. 1992) (internal quotations omitted). Irrespective of the merits of the underlying cause of action, it is counterintuitive to claim "injury" by virtue of having received more than one's due.      [7]  To the extent he believes that he has been injured by receiving the COLA, Congressman Schaffer can mitigate his injury by resorting to a self-help remedy—he can remit the portion of his pay he believes is unconstitutional to the Treasury.  As a member of Congress, he can work within the political system to press for repeal of the challenged COLA provision as has been done in the past.  We hold that he was not injured for standing purposes simply because he received a higher salary.

## C

---

[7]  The Court of Appeals for the District of Columbia Circuit reached a contrary conclusion in Boehner v. Anderson, 30 F.3d 156, 160 (D.C. Cir. 1994). For the reasons discussed below, see infra Part II.C, we believe that Boehner is unsupported by the Supreme Court's standing jurisprudence, and we reject its analysis.

Congressman Schaffer also declares the COLAs to be "damaging to his political position and his credibility among his constituency." (Appellants' Reply Br. at 1.) However, he points to no concrete evidence of a loss of credibility or other reputational injury as a result of the COLAs, past or future. As appellees point out, he was reelected in 1998 after having received a COLA. [8] This is therefore not a case like Department of Commerce v. United States House of Representatives, 525 U.S. 316, 328–34 (1999), in which the plaintiffs established standing by presenting persuasive statistical evidence demonstrating the dilution of their political influence (i.e., the power of their votes) resulting from the likely loss of congressional districts in their states.

Rather, this case is much closer to Raines, in which the Court held that members of Congress lacked standing to challenge the statute creating the line-item veto. Like the plaintiffs in Raines, Congressman Schaffer has not alleged a sufficiently personal injury to establish standing because he "ha[s] not been

---

[8] In fact, Congressman Schaffer was elected to a third term shortly before oral argument in this case. We take judicial notice of the fact that his percentage of the vote has increased each time he has run for reelection. When first elected to Congress in 1996, he won with 56% of the vote. See The Political Reference Almanac (Anthony Quain, ed., 1999–2000 ed.), available at http://www.polisci.com/almanac/legis/district/CO04.htm. In 1998, he won reelection with 60% of the vote. Id. Most recently, Congressman Schaffer ran unopposed by a major party candidate and garnered nearly 80% of the votes cast. See Colorado Secretary of State, November 7, 2000 Colorado General Election Results Final Certified Official, at http://www.sos.state.co.us/pubs/elections/elec_night.html (Jan. 4, 2001).

singled out for specially unfavorable treatment as opposed to other Members" of the House of Representatives. 521 U.S. at 821. Instead the COLAs, which apply to every Representative, "necessarily damage[] all Members of Congress . . . equally." Id. Congressman Schaffer's allegations of harm to his political position and his credibility among his constituency are even more abstract than the assertion of a "dilution of institutional legislative power" the Court found wanting in Raines. Id. at 826; see also id. at 821 (noting that a "claim of standing . . . based on a loss of political power," unlike the loss of a private right, is insufficiently concrete). Finally, as in Raines, there has been no nullification of Congressman Schaffer's ability to vote on the COLAs; if he received a COLA in 1998, that is simply because he "lost that vote." Id. at 824. The Ethics Reform Act has no effect on either Congressman Schaffer's ability to press for a change in the law setting Representatives' salaries or for Congress to amend the COLA provisions pursuant to the normal legislative process. See id.

Congressman Schaffer relies heavily on Boehner v. Anderson, 30 F.3d 156 (D.C. Cir. 1994), which involved a similar challenge to the COLA provision of the Ethics Reform Act brought by a member of Congress. Boehner concluded that a Congressman, who "by virtue of that office . . . is also an employee of the United States Government[,] . . . clearly has standing to challenge the operation of a law that directly determines his rate of pay" because such a claim "alleges a

- 16 -

'distinct and palpable injury' to him in his capacity as an employee." Id. at 160. This holding relies on no Supreme Court precedent and precedes Raines. We find the cursory discussion in Boehner unpersuasive and contrary to recent Supreme Court law and thus reject its standing analysis.

We note that, as in Raines, "our conclusion neither deprives Members of Congress of an adequate remedy (since they may repeal the Act [or vote to refuse the COLAs]), nor forecloses the Act from constitutional challenge (by someone who suffers judicially cognizable injury as a result of the Act)." [9] 521 U.S. at 829. Congressman Schaffer himself, however, has failed to carry his burden of showing his "claimed injury is personal, particularized, concrete, and otherwise judicially cognizable." Id. at 820. [10]

### III

---

[9] At oral argument, defendants asserted that none of the parties was responsible for paying congressional salaries. Thus, we do not consider the broader question of whether the refusal by a disbursing officer to pay the legislative COLAs on the claimed basis that it would be unconstitutional to do so could lead to a different result.

[10] As a theoretical matter, it may make sense for plaintiffs like Congressman Schaffer to be granted standing to challenge the unconstitutionality of particular acts of Congress; as the Supreme Court pointed out in Raines, "some European constitutional courts operate under one or another variant of such a regime [regarding who may bring suit to enforce the constitution]." 521 U.S. at 828 (citing authorities). "But it is obviously not the regime that has obtained under our Constitution to date" due to Supreme Court doctrine establishing a "more restricted role of Article III courts." Id. (citing United States v. Richardson, 418 U.S. 166, 192 (1974) (Powell, J., concurring).

Because Congressman Schaffer lacks standing, we **AFFIRM** the district court's dismissal of this case, albeit on different grounds from those articulated by the district court. See United States v. Sandoval, 29 F.3d 537, 542 n.6 (10th Cir. 1994) ("We are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." (quotations and citations omitted)).