AGAOLEATU CHARLIE TAUTOLO, FOR HIMSELF, THOSE INDIVIDUALS SIMILARLY SITUATED AND AS REPRESENTATIVE OF A CLASS ACTION, AND DOES 1 THROUGH XXI, Plaintiffs,

v.

MATAGI RAY MAILO McMOORE, AND SESE PEKO McMOORE, Defendants.

High Court of American Samoa
Trial Division

CA No. 98-02

February 20, 2003

Before RICHMOND, Associate Justice, MAMEA, Associate Judge, and TUPUIVAO, Associate Judge.

Counsel: For Plaintiffs, Paul Miller
 For Defendants, Charles V. Ala`ilima

ORDER GRANTING MOTION TO DIMISS

Plaintiff Agaoleatu Charlie Tautolo ("Agaoleatu") has brought this action on behalf of himself, and as representative of the class of similarly situated individuals, against defendants Matagi Ray Mailo McMoore and Sese Peko McMoore (collectively "the McMoores"). The McMoores have moved to dismiss the action on various grounds. Because we agree with them that Agaoleatu lacks standing, we dismiss the action and avoid discussion of their other claims.[1]

## Background

Agaoleatu's complaint alleges that the McMoores misappropriated and converted public monies in violation of Territorial laws and procurement

---

[1] The McMoores have not extensively briefed the issue of standing. However, because standing is a jurisdictional requirement, and therefore speaks to our power to hear this case, we have a duty to make the determination *sua sponte.*

65

regulations. Furthermore, he claims these actions resulted in the McMoore's unjust enrichment. He prays for a court order demanding return of the monies—which would necessarily require a court ruling that the McMoores' conduct was unlawful—and an injunction barring the McMoores from future violations of Territorial law and regulations.

## Standard of Review

■ Agaoleatu's complaint is replete with conclusions of law entirely unsupported by specific facts. Nevertheless, the allegations necessary to determine our jurisdiction have been sufficiently pled. In evaluating standing, we "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Graham v. Fed. Emergency Mgmt. Agency*, 149 F.3d 597, 1001 (9th Cir. 1998) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). If needed, we may look beyond the pleadings themselves. 5A CHARLES ALAN WRIGHT & ARTHUR A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (2d ed. 1990). Furthermore, since standing "is a jurisdictional element that must be satisfied prior to class certification," *LaDuke v. Nelson*, 762 F.2d 2318, 1325 (9th Cir. 1985), our decision should not be read as an endorsement, or a denial, of class certification. Our disposition precludes us from reaching that issue.

A. Standing

■ The principles of standing articulated by the Federal courts "generally apply to the judiciary of this territory." *Mulitauaopele v. Togafau*, 26 A.S.R.2d 52, 53 (Trial Div. 1954). We need not rehash the long list of requirements to establish standing. Suffice it to say, a party must demonstrate that it has suffered an "'injury in fact,'" by which we mean an invasion of a legally protected interest that is 'concrete and particularized.'" *Id.* (quoting *Ne. Fla. Chapter of the Ass'n Gen. Contractors of Am. v. Jacksonville, Fla.*, 508 U.S. 656, 663 (1993)). Agaoleatu has not met this burden.

Agaoleatu has brought this action on behalf of himself and the class of persons which the "Faipule intended as beneficiaries of Fono money."[2] (Pl.'s Compl. ¶ 9). By this, Agaoleatu seems to mean that he represents the other House members—they being the potential beneficiaries of money which was budgeted specifically for use by the Fono, *e.g.*, the Fono's equipment or travel budget. Indeed, he asks that we order the McMoores to "pay or return [the money] to the budgeted appropriations fund of the Fono." *Id.*

---

[2] In this context, the Samoan word "Faipule" refers to members of the House of Representatives of the Legislature of American Samoa, and "Fono" means a legislative meeting.

Read literally, Agaoleatu's complaint fails to allege a cognizable injury. Any money budgeted specifically for the Fono's use is not property of the Fono or the Legislators; it is not, as Agaoleatu puts it, "Fono money." This hubristic claim has no basis in law, fact, or policy. Instead, like all the money used to support the American Samoa Government ("the Government") and its agents and agencies, if it belongs to anyone, it belongs to the people of American Samoa—for it is they who are the true beneficiaries of the Government's operations. The Fono's budget exists so that the Legislators can better serve the people and not so that the Legislators may profit from their position. The old adage comes to mind that ours is a *government of the people, by the people, for the people.*" Agaoleatu's complaint mocks this ideal.

■ On the other hand, if the allegations, serious as they are, were to be proven true, the McMoores' conduct cannot be considered benign. If true, the McMoores' conduct is abstractly injurious: they have violated the laws of the Territory, defrauded the Government, and breached the trust of our whole society. Therefore, construing the Complaint in favor of Agaoleatu, we deem this to be the injury he claims. However, the breadth of these alleged transgressions necessarily precludes Agaoleatu from claiming a specific injury. His claim is a general grievance that two individuals, one being the Speaker of the House, broke the law. Yet a claim "to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on [this Court.]" *Allen v. Wright*, 468 U.S. 737, 754 (1984).

That is not to say that this Court could never recognize this type of claim. At the Federal level, for example, the alleged conduct would fall under the umbrella of § 3729 of the False Claims Act, 31 U.S.C.A. §§ 3729-3731. Under 31 U.S.C.A. § 3730(a), the Attorney General of the United States, on behalf of the United States Government, may bring a civil action to recover money from any person who has defrauded that Government. Furthermore, under 31 U.S.C.A. § 3730(b)(1), the U.S. Congress has conferred standing on private persons to prosecute these claims on behalf of the United States Government. These suits, known as *qui tam* actions, reflect a policy decision "to enlist the aid of the citizenry in combating the rising problem of 'sophisticated and widespread fraud'" within the federal government. *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 745 (9th Cir. 1993); *United States ex rel. Kreindler v. United Techs.*, 985 F.2d 1148, 1153-55 (2d Cir. 1993).

■ But such a statute, while constitutional, underscores the fact that absent legislation a private person would have no recourse in the courts. "No common law right to maintain *qui tam* actions exists and authority to file such actions must be found in legislation." *United States ex rel. Burnette v. Driving Hawk*, 587 F.2d 23, 24 (8th Cir. 1978). And because

67

a member of the Legislature of American Samoa is also subject to standing requirements, the member cannot benefit from the status of a legislator; in the context of this case, the member is like any other person. *See Boehner v. Anderson*, 30 F.3d 156, 159-60 (D.C. Cir. 1994). Agaoleatu's downfall, then, is the lack of an equivalent of the Federal False Claims Act enacted in American Samoa.

Finally, we recognize that we have before conferred standing on members of our Legislature. *See generally The Senate v. Lutali*, 26 A.S.R.2d 125 (Trial Div. 1994). That case, however, and others like it, is distinguishable in that there the Legislators had proven that they suffered an injury in fact—dilution of their voting power. *Id.* at 127-28; *Michel v. Anderson*, 14 F.3d 623, 626 (D.C. Cir. 1994); *Vander Jagt v. O'Neil*, 699 F.2d 1166, 1168-71 (D.C. Cir. 1983); *Kennedy v. Sampson*, 511 F.2d 430, 433 (D.C. Cir. 1974).[3] We reiterate that Agaoleatu has shown no like injury in this case.

## Conclusion

Because Agaoleatu lacks standing, we grant the motion to dismiss the suit for want of jurisdiction.

It is so ordered.

---

[3] That said, even if Agaoleatu had standing, we would be confronted with the question of whether we should exercise our equitable discretion to avoid "interfere[nce] with the legislative process." *Riegle v. Fed. Open Market Comm.*, 656 F.2d 873, 882 (D.C. Cir. 1981). Because the complaint is vague, we cannot determine whether this case presents a "dispute properly within the domain of the legislative branch." *Boehner*, 30 F.3d at 160. If it did, though, and there was no claim of a constitutional violation, we would likely decline jurisdiction in the interest of comity; "if a legislator could obtain substantial relief from his fellow legislators through the legislative process itself, then it is an abuse of discretion for a court to entertain the legislator's action." *Melcher v. Fed. Open Market Comm.*, 836 F.2d 561, 565 (D.C. Cir. 1987); *see also Brown v. Hansen*, 973 F.2d 1118, 1121-22 (3d Cir. 1992); *Gregg v. Barrett*, 771 F.2d 539, 543-46 (D.C. Cir. 1985). *But see Vander Jagt*, 699 F.2d at 1170-71 (courts must provide remedy if Congress adopts rules inconsistent with the Constitution); *see generally Fa'amausili v. The Senate*, 6 A.S.R.3d 259 (Trial Div. 2002) (courts must provide remedy if the Legislature acts inconsistent with the Revised Constitution of American Samoa).